## POLICE JURY *v.* BRITTON.

The trustees or representative officers of a parish, county, or other local jurisdiction, invested with the usual powers of administration in specific matters, and the power of levying taxes to defray the necessary expenditures of the jurisdiction, have no implied authority to issue negotiable securities, payable in future, of such a character as to be unimpeachable in the hands of *bona fide* holders, for the purpose of raising money or funding a previous debt.

ERROR to the Circuit Court for the District of Louisiana.

*Messrs. E. T. Merrick and G. W. Race, for the plaintiff in error; Messrs. T. J. Semmes and W. A. Meloy, contra.*

Mr. Justice BRADLEY stated the case, and delivered the opinion of the court.

Britton and Koontz brought an action in the court below against the Police Jury of the parish of Tensas, Louisiana, to recover the amount of four hundred and sixty coupons, for $6 each, due on the 1st of July, 1870, for one year's interest on four hundred and sixty bonds of $100 each. The following is a copy of one of the bonds, and they were all of the same date and form, differing only in number:

**$100.** STATE OF LOUISIANA, **No. 423.**

ST. JOSEPH, July 1, 1869.

**The Parish of Tensas** *will pay to bearer, six years after date or sooner, at the pleasure of the Parish, one hundred dollars, with six per cent. interest thereon, payable annually at the office of the Parish Treasurer, as per coupons attached. This obligation is issued to fund the debt of the Parish in accordance with an ordinance passed by the Police Jury on the 18th day of January, 1869.*

ELI TULLIS,
President Police Jury.

REEVE LEWIS,
Clerk Police Jury.

The defendants put in an answer denying the validity of the bonds, of the ordinance under which they were issued, and of the drafts or orders for which they were substituted.

The cause was tried by a jury, and a verdict found for the plaintiffs. The case came here upon a number of exceptions taken at the trial, which, under the view we have taken of the case, it is not necessary to examine in detail.

The substantial facts of the case were, that in December, 1860, and January, 1861, the levee inspector of the parish of Tensas issued to certain persons by the name of Kennedy and Maxwell five "levee warrants" (as they are called) for work done on the levees in ward No. 3 of said parish, amounting in the aggregate to over fifteen thousand dollars. They were all sight drafts drawn by Charles B. Tenney, as levee inspector of the parish, on one Snyder, treasurer of the levee fund of the parish, in favor of Kennedy and Maxwell, or order, and expressed as "being for amount due them for and on account of work done on levees in ward No. 3 this day."

These warrants seem to have been issued in regular course, according to the laws then in force on the subject. Originally the levees were made by the riparian owners, who received their lands upon this condition; and, if they neglected their duty, the police juries of the several parishes (who are the local boards representing them) were required to have the work done, and to collect the expense from the delinquent landowner. Modifications of this system have from time to time been made by various acts of the legislature. The law under which the levee warrants above referred to were issued was passed in 1848; with amendments, passed in 1850 and 1852. It related to the parish of Tensas alone; and the substance of it, so far as is necessary for our purpose, was, that the police jury of that parish should appoint a levee inspector, whose duty was to direct and superintend the construction and repairs of all levees in the parish in accordance with the requisition of the police jury; to survey the levees, and where work was required to let it out to the lowest bid-

Statement of the case in the opinion.

der; and, after the work was finished on any particular section, the statute directed as follows:

"Then the inspector shall issue a warrant, payable to the contractor, which shall be a legal order upon the treasurer of the levee fund for the amount therein specified."

The statute then provided for the levee fund as follows:

"The police jury are authorized to levy and collect, in the same manner that the State and parish taxes are now collected, an annual tax upon the assessed value of real estate, as returned by the assessors of the State taxes. Said tax, when collected, shall form a special fund for levee purposes alone."

We have quoted these specific directions for the purpose of showing how carefully the legislature has prescribed the duties of all parties in relation to this matter. Not a word is anywhere said authorizing the parish jury to issue any bonds, or create any other evidences of debt, for work on the levees.

The general powers of the police juries of the State are carefully and particularly laid down in a statute on that subject passed in 1813, with some amendments in subsequent years. They are enumerated under eighteen distinct heads.* The section conferring powers commences as follows:

"The police juries shall have power to make all such regulations as they may deem expedient:

"1st. For the police of slaves in their respective parishes, and the pursuit of runaways, &c.

"2d. As to the proportion and direction, the making and repairing of the roads, bridges, causeways, dikes, levees, and other highways.

"3d. To lay such taxes as they may judge necessary to defray the expenses of their several parishes."

Other heads relate to clearing the Mississippi and other streams from obstruction, to the height of fences, the mark-

---

* Revised Statutes of Louisiana, title "Police Jury."

ing of cattle, the regulating of taverns, the establishment of ferries and toll bridges, &c., &c.

In restraint of the power of police juries and all other municipal bodies of the State to incur expenditures, the legislature in 1853 passed the following act:

"The police juries of the several parishes, and the constituted authorities of incorporated towns and cities in this State, shall not hereafter have power to contract any debt or pecuniary liability without fully providing in the ordinance creating the debt the means of paying the principal and interest of the debt so contracted."

And it is declared that such ordinance shall remain in force until the debt and interest are paid.*    Nothing of the kind was done in this case, and the defendants insist that the bonds are void on this account.    But this provision can hardly be said to apply to the proceedings of the inspector of levees, acting under the special statutes above mentioned; though we do not see why it is not applicable to the police jury, when that body attempts to charge the parish with a new set of securities payable at a distant day, with regular interest warrants, and negotiable from hand to hand; even though such securities were issued to fund a previous liability.    But waiving this point, we proceed to other aspects of the case.

As bearing on the question of authority it is pertinent to notice that, in 1860, the legislature passed an act expressly authorizing the police jury of the parish of Tensas "to issue their bonds for a sum not to exceed $200,000, not having more than five years to run, and payable at one of the banks of the city of New Orleans, and not to be for less than one thousand dollars each."    Other specific directions and conditions are contained in the law.    It is not pretended that the bonds in question were issued in accordance with this act, and no other act is referred to giving any such power. This instance, however, goes to show that special legislative

---

* Revised Statutes of 1856, p. 345.

authority was deemed requisite to enable the police jury to issue bonds when such securities were required for raising money to meet the necessities of the parish.

It thus appears that the police jury had no express authority to issue the bonds in question, and that if they had any authority it must be implied from the general powers of administration with which they were invested. We have, therefore, the question directly presented in this case whether the trustees or representative officers of a parish, county, or other local jurisdiction, invested with the usual powers of administration in specific matters, and the power of levying taxes to defray the necessary expenditures of the jurisdiction, have an implied authority to issue negotiable securities, payable in future, of such a character as to be unimpeachable in the hands of *bonâ fide* holders, for the purpose of raising money or funding a previous indebtedness?

This subject as applied to various municipal bodies has been much discussed in the courts of this country, and various conclusions have been reached, depending sometimes upon the peculiar character and statutory powers of the corporation, sometimes upon the character of the objects to be attained, and sometimes upon the naked implication of power supposed to arise from the express power to make expenditures. A collection of the cases may be found in Dillon on Municipal Corporations.* That a municipal corporation which is expressly authorized to make expenditures for certain purposes may, unless prohibited by law, make contracts for the accomplishment of the authorized purposes, and thereby incur indebtedness, and issue proper vouchers therefor, is not disputed. This is a necessary incident to the express power granted. But such contracts, as long as they remain executory, are always liable to any equitable considerations that may exist or arise between the parties, and to any modification, abatement, or rescission in whole or in part that may be just and proper in consequence

---

* Section 407, note.

of illegalities, or disregard or betrayal of the public interests. Such contracts are very different from those which are in controversy in this case. The bonds and coupons on which a recovery is now sought are commercial instruments, payable at a future day and transferable from hand to hand. Such instruments transferred before maturity to a *bonâ fide* purchaser leave behind them all equities and inquiries into consideration and the conduct of parties; and become, in the hands of an innocent holder, clean obligations to pay, without any power on the part of the municipality to demand any inquiry as to the justice or legality of the original claim, or to plead any corrupt practice of the parties in obtaining the security. This characteristic of commercial paper, which no court has more faithfully enforced than this, raises the doubt whether the power to issue it can be implied from the ordinary powers of local administration and police which are conferred upon the boards and trustees of political districts. The power to issue such paper has been the means, in several cases which have recently been brought to our notice, of imposing upon counties and other local jurisdictions burdens of a most fraudulent and iniquitous character, and of which they would have been summarily relieved had not the obligations been such as to protect them from question in the hands of *bonâ fide* holders. As such we have been reluctantly compelled to sustain them, but only on the ground that the power to issue them had been expressly, or by necessary implication, conferred by the legislature. The power to issue such obligations, and thus irretrievably to entail upon counties, parishes, and townships a burden for which perhaps they have received no just consideration, opens the door to immense frauds on the part of petty officials and scheming speculators. It seems to us to be a power quite distinct from that of incurring indebtedness for improvements actually authorized and undertaken, the justness and validity of which may always be inquired into. It is a power which ought not to be implied from the mere authority to make such improvements. It is one thing for county or parish trustees to have the power to

incur obligations for work actually done in behalf of the county or parish, and to give proper vouchers therefor, and a totally different thing to have the power of issuing unimpeachable paper obligations which may be multiplied to an indefinite extent. If it be once conceded that the trustees or other local representatives of townships, counties, and parishes have the implied power to issue coupon bonds, payable at a future day, which may be valid and binding obligations in the hands of innocent purchasers, there will be no end to the frauds that will be perpetrated.

We do not mean to be understood that it requires, in all cases, express authority for such bodies to issue negotiable paper. The power has frequently been implied from other express powers granted. Thus, it has been held that the power to borrow money, implies the power to issue the ordinary securities for its repayment, whether in the form of notes, or bonds payable in future. So, the power to subscribe for stock in a railroad, or to purchase property for a market-house, and other like powers which cannot be carried into execution without borrowing money, or giving obligations payable in the future, have been held sufficient to raise the implied power to issue such obligations. But in our judgment these implications should not be encouraged or extended beyond the fair inferences to be gathered from the circumstances of each case. It would be an anomaly, justly to be deprecated, for all our limited territorial boards, charged with certain objects of necessary local administration, to become the fountains of commercial issues, capable of floating about in the financial whirlpools of our large cities.

In the case before us, where was the necessity of funding the levee warrants held by the contractors? If it was desired to avoid the danger of prescription, an acknowledgment authorized by the police jury would have had all the effect which a new security could give. Where, among all the powers given to the police jury, can the power be found or fairly inferred, of funding the indebtedness of the parish, by issuing six or ten year bonds payable to bearer, with the

regular apparatus of coupons—securities specially framed and contrived for distant and diffusive circulation? When the legislature deemed it. desirable for the parish to issue such paper to enable it to raise money, the power was expressly given, with proper safeguards and limitations. This very fact indicates the legislative understanding that no general and indefinite power of the kind had any existence.
. In our opinion the police jury had no authority to issue the bonds and coupons in question; and therefore the judgment must be

REVERSED.