**KEEL, Mayor, et al. v. PULTE.**
(No. 1104—5019.)

Commission of Appeals of Texas, Section A. Nov. 28, 1928.

W. L. Blanton and Cecil Murphy, both of Gainesville, Elcock & Martin, of Wichita, Kan., M. H. Smith, of Houston, and W. P. Dumas, of Dallas, for plaintiffs in error.

Head, Dillard, Smith, Maxey & Head, of Sherman, and Thompson, Knight, Baker & Harris and John D. McCall, all of Dallas, as amici curiæ.

Culp, Culp & Culp, of Gainesville, for defendant in error.

HARVEY, P. J. The city of Gainesville is, and was at the various times hereinafter mentioned, a city of more than 10,000 inhabitants, duly operating as such under special charter, granted by the Legislature in March, 1909. The governing body of the city is a city council composed of the mayor and the aldermen. On August 17, 1926, the city entered into a contract with the Superior Incinerator Company of Texas, for the construction by said company of a garbage incinerator plant for the city. According to the terms of the contract, the contract price of the plant is $16,000, payable in annual installments of $1,000 each. City warrants covering the contract price are to be issued and delivered to the contractor in three installments, as the work progresses, upon estimates by the city of the work done and material furnished; the third installment of warrants to be delivered when the plant is completed and is accepted by the city. The contract was entered into by the city by ordinance which recites the contract. The ordinance provides for the issuance of city warrants in the sum of $1,000 each, to cover the contract price of the plant. It provides that said warrants shall be payable serially on the 1st day of March of each year up to and including March 1, 1943; that they shall bear interest at the rate of 6 per cent. per annum, evidenced by interest coupons attached to the warrants; that they shall be executed and delivered to the incinerator company in accordance with

the terms of the contract, "upon certified statements of account or upon estimates of the material which has been installed, and labor which has been performed, and accepted by the said city prior to the date of such delivery, such delivery to be made only after inspection of materials and labor by the city council, or its officers designated by it, as provided in the contract"; that said warrants shall be denominated "City of Gainesville, Texas, Incinerator Warrants, Series 1926"; that each of the warrants shall be made payable "to bearer." The ordinance makes provision for the levy and collection of a suitable tax each year for the payment of the warrants and interest. The ordinance further prescribes the form which each of the warrants shall bear. According to such form, each warrant will be denominated upon its face as an incinerator warrant, and will recite, among other things, that the city "acknowledges itself indebted to and promises to pay to the bearer" the sum of $1,000.00, and that—

"This warrant is one of a series of warrants of like tenor, except as to maturities, numbered from one to sixteen inclusive, in the denomination of $1,000.00 each, aggregating $16,000.00, issued for the purpose of installing a garbage incinerator in accordance with a contract executed by and between Superior Incinerator Company of Texas, and the City of Gainesville, dated August ——, 1926, the claims for which were duly certified by the proper officers, approved and allowed by the city council of said city prior to their issuance, in accordance with the Constitution and laws of the State of Texas, the charter of the city, and pursuant to an ordinance duly and legally passed by the city council on the —— day of August, 1926, duly of record in the minutes of the city council of the City of Gainesville."

The making of said contract and the issuance of said warrants have not been authorized by the voters of the city, in accordance with the provisions of article 4 of the City Charter, hereinafter set out, and no election for that purpose has been held.

On August 28, 1926, prior to the commencement of work on the proposed incinerator plant, the defendant in error, A. F. Pulte, a residence taxpayer of the city,. brought this suit for injunction against the members of the city council and the Superior Incinerator Company, alleging lack of power in the city council to create a debt against the city for an incinerator plant in the manner proposed, and seeking to enjoin the city and the incinerator company from constructing the incinerator plant and to enjoin the issuance of the warrants provided in the above-mentioned ordinance. On the same day the district judge, in chambers, granted a temporary injunction against the defendants. Later, upon motion filed by the defendants, the judge entered an order dissolving the temporary injunction. From this order, the plaintiff, Pulte, appealed, and the Court of Civil Appeals reversed the order of dissolution that had been entered by the judge of the lower court, and reinstated the temporary injunction (297 S. W. 241).

We shall first examine the question as to the power of the city to create the debt in question and to issue nonnegotiable interest-bearing obligations of the city for the debt so created. It is expressly provided in section 2 of article 2 of the city charter that—

"The specification of particular powers shall never be construed as a limitation upon the general powers herein granted; it being intended by this act to grant and bestow upon the inhabitants of the City of Gainesville full power of self-government, and it shall have and exercise all powers of municipal government not prohibited to it by this charter, or by some general law of the State of Texas, or by the provisions of the Constitution of the State of Texas."

■■It is believed that the grant of full power of self-government has the effect of expressly conferring upon the inhabitants of the city, acting through the city council, full authority to perform any municipal function of local concern, subject only to statutory or constitutional restrictions, and to such limitations as are expressly, or by necessary implication, laid by other charter provisions. This authority, thus expressly conferred, includes, of course, the construction of an incinerator for the disposal of garbage; for it cannot be seriously doubted that the disposal of garbage is a proper municipal function, and that an incinerator for the destruction of garbage is a suitable means to promote the health, comfort, and convenience of the citizens of the municipality.

It is claimed that, because the incinerator is a permanent improvement and public utility, the creation of a debt with respect to its construction is governed exclusively by the provisions of sections 1, 2, and 3 of article 4 of the charter, which sections read as follows:

"Section 1. The city council of the City of Gainesville shall have power and authority by ordinance duly passed if it so elects to borrow money on the credit of the city for permanent improvements, for public buildings, for the permanent improvement of its streets, avenues, alleys, public grounds, building of sidewalks, macadamizing, remacadamizing, paving and repaving of streets, alleys, avenues and public grounds and for the purpose of providing the city with funds for the ownership of public utilities, including water, light, sewer and gas works; and the city council may issue bonds for the City of Gainesville for all or any of the above purposes to any amount not exceeding $150,000 in any one year; provided, that in addition the said city is expressly authorized to issue bonds for the purpose of refunding the bonds of the city previously issued; provided, that the bonds be refunded at the same or a lower rate of interest that the bonds proposed to be retired draw. It is further provided that debt shall never be created by the City of

Gainesville unless at the same time provision be made to assess and collect annually a sufficient sum to pay the interest thereon and create a sinking fund of at least two per cent. thereon.

"No bonds shall be issued for any purpose except the purposes above named which shall not exceed $150,000 for any one year and for the purpose of refunding bonds previously issued.

"No bonds shall be issued for any purpose in excess of $2,500 unless an election be ordered by the mayor and city council, and if at said election the majority of the votes polled shall be in favor of creating such debt it shall be lawful for the city council to make the issuance of the bonds as proposed in the ordinance submitting the same at the election, at the election so held, but if a majority of the votes polled shall be against the creation of such debt it shall be unlawful for the city council to issue the bonds.

"In all elections determining the expenditure of money for the assumption of debt only those shall be qualified to vote who pay taxes on property in said city and are legally qualified voters therein.

"No bond shall be issued drawing more than five per cent. interest and they shall be invalid if sold for less than par and accrued interest, and all bonds shall express upon their face the purpose for which they are issued.

"The ordinance authorizing any bonds to be issued shall provide for the creation of a sinking fund sufficient to pay the bonds at maturity and make provisions for payment of interest thereof as it matures and said sinking fund may be invested in the bonds of the State of Texas or in bonds issued by the counties of the State of Texas or such funds may be used for the purchase of bonds of the City of Gainesville which are not yet due, and neither interest or sinking fund shall be devoted to any other purpose whatever.

"Sec. 2. Provided further, that the City of Gainesville shall have authority to construct or purchase public utilities and pledge said public utilities so constructed, together with the revenues and profits therefrom to secure the bonds and the interest thereon for said construction.

"Sec. 3. Provided, that said city may issue not exceeding $2,500 in bonds when authorized by law so to do without holding an election for that purpose."

The power to issue negotiable paper for public improvements, or for money borrowed for the purpose of acquiring such improvements, is a power which is regarded as being beyond the scope of power of the governing body of a city or a county unless it be specially granted. This extraordinary power, when granted, can be exercised only in the mode and for the purposes specified in the grant. Foster v. City of Waco, 113 Tex. 354, 255 S. W. 1104. But the grant of this power does not impliedly deprive the governing body of the authority to make those same improvements on credit, and to issue nonnegotiable interest-bearing obligations of the municipality for the debt thus created, if elsewhere the authority to make the improvements is conferred. Lasater v. Lopez, 110 Tex. 189, 217 S. W. 373; Bridgers v. City of Lampasas (Tex. Civ. App.) 249 S. W. 1084

(writ refused); Payne v. Bank (Tex. Com. App.) 291 S. W. 211; Galveston v. Loonie, 54 Tex. 523.

For the reasons stated, it is concluded that, even in the absence of an express charter restriction preventing an implied limitation of the general grant of municipal powers from arising upon a special grant of a particular power, the provisions of sections 1 and 3 of article 4 of the charter would not have effect to exclude by implication the authority to create the indebtedness in question, and to provide for its payment, in the mode and for the purpose proposed. Whether, in the absence of an express charter restriction, such as just mentioned, the provisions of section 2 of article 4 would or would not impliedly exclude the last-mentioned authority, is a question which need not be considered here; for we have concluded that the express provisions of section 2 of article 2, already quoted, have effect to prevent the special grant of the particular powers specified in section 2 of article 4, from impliedly excluding authority to acquire and pay for the incinerator plant in the manner and through the means undertaken here. In the case of Foster v. City of Waco, cited above, there appeared no charter provision which expressly denied to the specially granted power to create "debts" (as defined in McNeal v. City of Waco, 89 Tex. 83, 33 S. W. 322) by means of a "deficit," the exclusiveness which is ordinarily implied when a particular power is specially granted and the mode of its exercise is prescribed in the grant. In this important respect the charter of the city of Gainesville differs from the one under consideration in the Foster Case.

It is a matter of no importance if the instruments proposed to be designated as "warrants" do not strictly accord with the technical definition of warrants. The instruments certainly are not bonds. The fact that they are to be denominated on their face as "warrants," and not bonds, is not wholly without significance in determining their nonnegotiable character. Besides, their recitals and references, taken in connection with their designation as "warrants," clearly indicate their character as nonnegotiable obligations of the city, given for an indebtedness created prior to their issuance. Performance of the city's promise to pay depends upon liability for the debt which is evidenced, prima facie, by the instruments. This much appears from the face of the instruments and the ordinance under which they are proposed to be issued. But aside from all this, it must not be forgotten that bonds are negotiable instruments, and as such are subject to immunities which are not available to other classes of obligations. The term "bonds," as that term is used in section 1 of article 4 of the city charter, implies more than a mere promise to pay. The term has reference to instruments having the qual-

ity of negotiability. City of Austin v. Nalle, 85 Tex. 543, 22 S. W. 668, 960. It has not been made clear to us that an instrument purporting on its face to be a warrant, though couched in terms importing negotiability, comes within the purview of the section of the charter just mentioned, unless issued under the authority and in accordance with the mode prescribed for the issuance of bonds; for, regardless of its terms, the instrument, if issued in a different mode and without such authority, cannot be treated as a negotiable instrument. See City of Tyler v. Jester (Tex. Civ. App.) 74 S. W. 364; Id., 97 Tex. 344, 78 S. W. 1058; City of Galveston v Loonie, supra; San Patricio County v. McClane, 44 Tex. 392.

It is not deemed amiss to mention the fact that the warrants in question here contain a provision for the payment of attorney's fees in case of default in payment of the warrants. The validity of that provision will be determined when the occasion arises. We neither express nor imply an opinion regarding its validity, since that question is not material to a decision of the case before us.

We recommend that the judgment of the Court of Civil Appeals reversing the order of the trial judge be reversed, and that the order of the trial judge dissolving the temporary injunction be affirmed.

CURETON, C. J. The judgment of the Court of Civil Appeals is reversed, and the order of the district judge dissolving the temporary injunction is affirmed.