CLARK et al. v. W. L. PEARSON & CO. et al.
No. 8353.

Court of Civil Appeals of Texas. San Antonio.
Feb. 19, 1930.

Rehearing Denied March 19, 1930.

384

E. B. Ward and Lewis H. Jones, both of Corpus Christi, for appellants.

H. J. Passmore, of Robstown, Tarlton & Lowe, of Corpus Christi, and B. H. Kirk, of Robstown, for appellees.

SMITH, J.

During the period in which the transactions involved in this litigation occurred, the city of Robstown, in Nueces county, embraced a population of more than 1,000 and less than 5,000 inhabitants. By vote of its inhabitants, said city accepted the benefits and adopted the provisions of chapter 9, tit. 28, of the present Revised Statutes (article 1086 et seq.), as provided in article 1104 thereof. Acting under the provisions of this chapter, the city council, by ordinances, ordered the paving of certain streets within the corporate limits and levied special assessments against owners of property abutting upon the streets to be so improved to cover the whole cost of curbs and gutters and three-fourths of the cost of paving, under the authority of article 1090, and within the limitations prescribed in article 1088. The council, also by ordinances, entered into a contract with W. L. Pearson & Co. to construct said improvements, and by virtue of the same article provided for the payment of the city's proportionate cost of such improvements, so contracted for, out of the available funds of the city, by appropriating 67 cents, or so much thereof as would be necessary, out of the annual ad valorem tax of $1.50. This debt was evidenced by the city's 6 per cent. interest-bearing warrants to be issued as earned, in favor of the contractor, to the amount of $200,000, or so much thereof as became necessary under the contract.

Before all the warrants mentioned had been issued by the city and delivered to the contractors, W. C. Clark, owning property abutting upon one of the streets so improved, subsequently joined by certain other citizens in the same class, brought suit against the city and its officials and the contractor, alleging that the whole official proceedings to improve said streets, as well as the special assessments, the tax levy, the contract with Pearson & Co., and the warrants issued and to be issued, were invalid and void, for various reasons set out in a 23-page petition, which need not be further analyzed at this juncture. Subsequently all the parties to that suit settled and compromised the matters involved in that litigation, and their agreement was embodied in a consent decree, approved by the trial court, and duly entered as the judgment of the court. In that judgment it was decreed that the special assessments theretofore made by the city against the properties abutting upon the improved streets were "irregular and invalid," and that they be canceled, and the city was restrained from attempting to collect said assessments "theretofore" so made. It was further decreed, however, that the contract between the city and the Pearson Company was a "valid and legal obligation and debt of the city," and that the warrants issued or to be issued as evidence of said indebtedness, in the sum of $181,000, "are legal obligations of the city of Robstown and are in conformity with the Constitution and laws of this state; that the work to be performed by said W. L. Pearson & Company under said contract has been performed in accordance with the terms of said contract, and has been approved and accepted by the city of Robstown through its proper authorities;" that warrants in the amount of $155,000 already delivered to Pearson & Co. "are in all things legal and valid," and the city was ordered to issue and deliver additional warrants in the sum of $26,000 to cover the balance due said contractors for the work they had done under said contract; that all warrants of the $200,000 issue in excess of $181,000 are invalid, and shall be canceled. This decree, agreed to by the attorneys for all the parties, and approved by the trial judge as being in accordance with the agreement of the parties made in open court, and as being "in all things fair and equitable," was duly entered as the judgment of the court, which was in turn approved by the city by entry upon its minutes. This was on March 13, 1929.

On May 7, 1929, the city, proceeding under article 1096, sought to correct the mistakes and invalidity in the original assessment, by reassessing the cost of the improvement.

Some time during the month of April, 1929, W. C. Clark, plaintiff in the original suit, joined later on by those intervening in that suit, filed the instant suit to set aside the agreed judgment rendered in the former suit, alleging fraud in its procurement, and by amendment in May sought further to establish the invalidity of the paving proceedings, contract, warrants, assessments, reassessment, and levies thereunder.

This cause was tried by jury, and, from an adverse judgment based upon a directed verdict against them, Clark and his associates have brought this appeal.

The incorporated city of Robstown, having by popular vote accepted the benefits of

the act of the Legislature embraced in the present chapter 9, tit. 28, R. S. 1925, had the power granted in that act to pave the streets and construct sidewalks, curbs, gutters, and sewers within its corporate limits. Article 1086.

The city is also given express statutory power in that chapter to order the improvement of its streets with materials and through methods of its own selection, to contract for such improvements in the name of the city, and "to provide for the payment of the cost of such improvements out of any available funds of the city." Article 1087.

So did the city have the power, which it exercised in this case, to assess the whole cost of sidewalks or curbs, and three-fourths of the cost of paving, against the owners of property abutting upon the streets so improved, to provide the terms of payment of such assessments, and to fix the rate of interest payable upon deferred payments thereon, not to exceed 8 per cent. per annum, and to provide for collection thereof, with costs and reasonable attorney's fees, if incurred. Article 1090. We overrule appellants' propositions 7, 8, 9, 10, and 13, in which these powers are questioned.

Appellants undertake to test the power of the city to apportion the costs of street improvements between the city and the abutting property owners, by the restriction in article 1082, c. 8, tit. 28, that such costs shall be borne by the city and abutting property owners in the proportion of one-third and two-thirds, respectively. The test of this power, however, must be made in this case by the provisions of article 1090, c. 9, under which, by vote of its inhabitants adopting it, the city of Robstown was authorized to provide for those improvements, although in making assessments or reassessments the city was required, by the provisions of article 1101, to "follow the *procedure* prescribed in articles 1082 and 1083 in so far as applicable."

In article 1090, c. 9, under which it is operating, the city was expressly empowered to assess the "whole cost of constructing sidewalks or curbs, and not to exceed three-fourths of the cost of any other improvement, against the" abutting owners, and this provision prevails over those in article 1082, c. 8, which do not affect the grant of powers to cities which have adopted the benefits of chapter 9, embracing article 1090. Herring v. City of Mexia (Tex. Civ. App.) 290 S. W. 792. We overrule appellants' propositions 6, 13, 24. It is true, as appellants contend under some of their propositions, that the assessment against any owner shall not in any event exceed the actual benefits to such owner in the enhancement of his property, by means of such improvement, as ascertained at the hearing upon such matters. Hearings were had prior to and as a basis for both the original assessment and the reassessment here complained of, and the questions of the necessity for the improvements and of the benefits to be derived by the property owners therefrom were considered and adjudicated by the city council. That adjudication was conclusive, in the absence of fraud, which is not alleged in that connection in this case, as to either the original assessment or reassessment.

Under the same article (1090), the city was likewise expressly empowered to make the assessments payable either in lump sums or in interest-bearing deferred payments, and to provide for the payment of reasonable attorneys' fees, "if incurred" in collecting such installments; and, by implication, to provide for acceleration of the maturity of the installments in case of default. Accordingly, we overrule appellants' propositions 7, 8, 11.

Nor was it necessary, in the notices of the hearings, to specify that these provisions would be incorporated in the assessment or reassessment ordinances. Those provisions were in the statutes authorizing the assessments, and appellants were charged with notice thereof. We overrule appellants' propositions 9, 10.

This power of the city to assess the property owner with the prescribed proportion of the costs of said improvements is fortified by a further grant of power to reassess said costs, or part thereof, against the property owner, in case the original assessment is irregular or invalid, and in such reassessment correct any mistake or irregularity in the original proceedings or assessment. Article 1095. It was determined in the agreed judgment rendered in the former suit that the original assessment in the proceedings here involved was irregular and invalid, and after such adjudication the city proceeded to reassess the costs of the special improvements against the property owners benefited thereby, as expressly authorized in said statute.

It appears that the reassessment was based upon the actual cost of the improvements, and therefore in accordance with the original assessment, whereas appellants contend that it should have been based upon the actual value of the improvements in the condition they were in at the date of the reassessment. In article 1095 it is provided, generally, that the city may "reassess against any abutting property and its owner the cost or part of the cost of improvements," with no other limitation against the amount of the assessment than that it shall not be "in excess of the benefits in enhanced value of such property from such improvement." In article 1097, provision is made for a "special reassessment," which is applicable generally to cities of every class, and in which it is

provided that the "special" reassessment may be for "such amount of the cost of such improvement" as the governing body "deems proper," subject to the limitation that it shall not exceed the special benefit the property receives from the enhanced value, to be determined on the basis of the condition of the improvement as it exists at the time of the assessment or reassessment. This apparent conflict in the provisions of the two articles, 1095 and 1097, might be confusing in determining appellants' contention in this appeal, but for the provisions of article 1101, that in cities of less than 5,000 population the assessment or reassessment "may equal the entire cost of sidewalk, curb and gutter, and the cost of any street improvement, exclusive of street intersections," subject only to the restriction that no "assessment or reassessment shall be made in excess of the special benefits" to the abutting property. In this case the reassessment was based upon the conclusive finding of the city council, made in consequence of the hearing, that the benefits derived from the enhanced value of the property exceeded the amount of the reassessment, thus bringing the case within the requirements of each of said articles. The fact that some of appellants' witnesses testified to defects in the construction and maintenance of the improvements, and expressed their opinion of disparities between the benefits and assessments, does not impair the conclusiveness of the adjudication by the council, at least in the absence of clear proof of fraud upon the part of the council in that adjudication. We overrule appellants' propositions 12, 13, 14, 15, 16, 17, 24.

For a like reason the adjudication by the council of the question of necessity for the improvement, and of compliance with the contract by the contractor, was conclusive, and appellants' propositions 18, 19, 21, to the contrary, are overruled.

■ The reassessment statutes are not retroactive in their effect, nor do they otherwise contravene the provisions of the Federal or State Constitutions, as contended by appellants in their propositions 20, 26, which will be overruled. Booth v. Asphalt Co. (Tex. Civ. App.) 296 S. W. 345 (writ refused). Nor was there any evidence to support appellants' charge that the city and the contractor entered into a conspiracy to procure an improper judgment in the former suit. Appellants' proposition 23 is therefore overruled.

So is proposition 14 overruled, for the reason that the question of the relative value of the improvements and the resulting benefits to the property was conclusively adjudicated in the hearings thereon prior to assessment and reassessment.

■ The city likewise had the power, exercised in this case, to provide for the payment of its proportion of the cost of such improvement in interest-bearing warrants, payable annually over a period of years, without submitting the matter to a vote of the people. Keel, Mayor, v. Pulte (Tex. Com. App.) 10 S. W.(2d) 694; Simms v. City of Mt. Pleasant (Tex. Civ. App.) 12 S.W.(2d) 833; Bridgers v. City of Lampasas (Tex. Civ. App.) 249 S. W. 1083 (writ refused). At the time of authorizing this debt, the city council provided for the liquidation thereof by levying an ad valorem tax of 67 cents, or so much thereof as should be necessary, to provide a sinking fund and to pay the interest to accrue upon said warrants, as required by familiar constitutional provisions. Under this general authorization of 67 cents, the council appropriated 30 cents of the $1.50 ad valorem tax in each of the first two ensuing years, and 46 cents for the third and last past year. The levy and appropriations thereunder were included in the ad valorem tax, and, with the funds derived from the special assessments, were segregated from the general fund and levy, and designated as a special fund to pay the principal of said warrants as they matured, and the interest thereon as it accrued from year to year. By this process the debt is being liquidated out of the city's "available funds," without raising the ad valorem tax rate beyond the constitutional limitation of $1.50. We overrule appellants' propositions 25, 27, 28, 29, 30, 31, and 34.

■ The consent judgment was agreed to in open court by counsel for all the parties to the suit in which that judgment was rendered. Appellants have raised the question of the authority of its attorneys to bind the city by such agreement and judgment, insisting that such authority may be exercised only in pursuance of ordinances regularly enacted by the city's governing board, and duly entered upon its minutes. It may be true that a municipality might not be bound through a consent judgment to assume obligations prohibited by the Constitution or statutes, or to surrender rights or functions inherent in it thereunder. We do not pass upon that question; it being unnecessary to do so in our view of the case, since it is decided herein that the city acted within its powers in the matters complained of in this as in the former suit. We are of the opinion, however, that the city may be so bound upon issues of fact in controversy between the parties to the suit in which such judgment is rendered, and upon the determination of which facts such judgment depends. Besides, the city ratified the action of its counsel by having the consent judgment forthwith entered in the minutes of the city council. But it is obvious from the record that neither the city nor appellants were overreached or deceived into agreeing to the consent judgment, a matter now to be considered.

It is contended by appellants that the agreed judgment was void because the contractors were awarded judgment therein for $181,000, whereas they had prayed in that suit for recovery of only $175,000. It is sufficient to say upon this point, that the record does not appear to disclose the amount claimed by the contractor in the original suit, and hence affords no basis for determining the point, which is accordingly overruled.

So is it contended that the amount awarded to the contractor in the agreed judgment exceeded the amount for which the city was authorized to pay the contractor, and that the city "could not, by consent judgment, do what it could not contract to do under the law." We have carefully considered this contention, and tested it by the record, and conclude that, regardless of the question of the binding effect of the consent judgment upon the rights and liabilities of the parties, the amount in question was substantially correct. Apparently, as a matter of convenience, warrants aggregating $4,000 in excess of the amount for which the city was obligated to the contractor under the contract were issued to the contractor, who thereupon returned the amount of the excess to the city. This was done in order to enable the city to restore the balance between this fund and the city's general fund. The process was perhaps irregular, but it was not fraudulent, and ought not to be given the effect of disrupting the whole structure of which it was but a negligible part. We overrule appellants' propositions 1 and 2.

Appellants sought to set aside the consent judgment rendered in the former suit, upon the further ground that that judgment was procured through false and fraudulent representations made to appellants by the representatives of appellees as to the existence of certain facts recited in and forming the basis of the judgment. These allegations of fraud were sought to be established by the testimony of counsel representing the plaintiffs in the former suit, who are appellants here, and of one Robertson, who was neither a party to the former suit nor of counsel for any party thereto, although he testified that some of the property owners had authorized him to represent them in the negotiations concerning the litigation. The actual negotiations leading to the agreed judgment appear to have been carried on between one of the attorneys for the contractor and the attorney for appellants. The attorney for appellants testified, in effect, that he had no personal knowledge of the amount the contractor had earned from the city under the paving contract nor of the action of the city council in approving or failing to approve the contractor's estimates or accepting the work done as being in compliance with the terms of the contract; that the attorney for the contractor had stated to him that those estimates, aggregating $181,000, had been audited and found correct, and had been approved and accepted by the city; that, in reliance upon these statements, he had approved the consent judgment in the form rendered. We conclude, in passing, that, even though the city had not theretofore formally approved all of those estimates and accepted all the work of the contractor, the action of the council in promptly approving and ratifying the judgment after it was rendered, and completing the issuance and delivery of the warrants in accordance therewith, had the effect of such approval and acceptance, and thereby met the very complaint and remedied the very wrong now urged by appellants as grounds for setting aside said judgment.

As a matter of fact, it appears from the record that the two major items are one of $155,000, shown to have been expressly approved by the city council, and one of $26,000, the correctness of which is not refuted by appellants, upon whom the burden of that issue rested.

testimony of the witness Robertson covers 45 pages of the statement of facts. We have painstakingly, laboriously, examined his testimony, much of which has no apparent bearing upon the case pleaded. It seems that Robertson occupied the official position of mayor of the city, and this paving program was initiated, prosecuted, and completed during his administration, and hence he was in a position to know, must have known, admitted that he did know, of every step taken in those proceedings. It was over his signature as mayor that the council approved estimates of the contractor's work to the amount of $160,691, and he signed warrants covering said estimates to the amount of $155,000. He testified that he was familiar with the amount and character of work done by the contractor, with the defects he now claims existed in the completed improvements, with the repairs done by the contractor to correct those defects, and with the conditions of the contractor's performance of the contract, at the time the consent judgment was entered. He testified that he "didn't have anything to do with the negotiations leading up to the" consent judgment, "anything more than I had with" appellants' counsel and "conferring in the matter with" him. There was nothing in his testimony to support the allegations that appellees procured the consent judgment by fraud, or that fraudulent representations to that end were made to him. And, even if he had testified that false statements had been made to him, that fact could not affect the validity of the judgment, since he was in legal effect a stranger to the litigation. This witness further testified that the present suit would not have been instituted had not the city afterwards proceeded to reas-

sess the property owners with their proportion of the cost of the improvement, following the rendition of the consent judgment establishing the irregularity and invalidity of the original assessment. In short, he testified in effect that the whole object of appellants in this litigation is to shift from their shoulders the burden of the special tax assessed against them as owners of some of the specially benefited property, and lay it upon the general taxpaying public who are not specially benefited by the improvement. Only about thirty-five of the several hundred property owners upon whom special assessments were cast, joined in this litigation to defeat that tax.

There were allegations that the consent judgment was procured through representations to appellants that the contractor would return to the city accrued interest on the warrants, in the amount of $5,000 and another item of $4,000, or $9,000 in all. The two witnesses mentioned testified about these items. Their testimony does not support the allegation with reference to accrued interest, or that such agreement or statement was made by the contractor. Their testimony shows that the question was raised by them before the consent judgment was finally agreed to and entered, but, because of the absence of the contractor, that agreement was not procured. The evidence is conclusive that the $4,000 item was afterwards returned to the city by the contractor as agreed. But it was conceded by all witnesses that the alleged agreement concerning these two matters was not intended to be incorporated in the consent judgment, and was not included therein. So, if there had been such agreement, and had the contractor defaulted therein, such default cannot be urged to set aside the judgment, from which adjudication of the matter embraced in the agreement was intentionally omitted, with the knowledge and acquiescence of all the parties. And ample remedy through other sources is still open to those aggrieved by the alleged defaults.

■ It was alleged by appellants that appellees were prohibited, by the terms of the consent judgment, from reassessing the costs of the improvement against the owners of abutting property, but this contention is without merit, since the judgment was silent upon the subject, and contains nothing from which such prohibition may be implied. So is it contended by appellants that they were induced to agree to the consent judgment by the assurance of appellees that there would be no reassessment, but the record does not support that contention. On the other hand, all the testimony conclusively negatives any such agreement. The witness Robertson, and perhaps counsel for appellant, surmised in their testimony that the decree in the consent judgment setting aside the original assessment on account of its irregularity and invalidity raised the presumption that the city

would not thereafter reassess. If that decree gives rise to any presumption, however, it is that the city would, rather than would not, reassess; for the city was obligated in good faith to the public to make such reassessment upon ascertaining that the original assessment was irregular and invalid, and the judicial ascertainment of that irregularity and invalidity rendered that obligation absolute. If the city had failed in its plain and bounden duty to reassess, the result would have been to put upon the whole taxpaying public of the city the burden of paying for the special enhancement of the value of appellants' property; whereas, under our Constitution and statutes, and in good morals and conscience as well, that burden properly belongs upon those specially benefited by the improvement.

■ So is it contended by appellants that, as a matter of fact, the contractor had not complied with his contract in constructing the improvements in question, and that appellants were deceived into agreeing to the consent judgment by appellees' representations that the contractor had complied with his contract. Only the witness Robertson testified with reference to these allegations, and, while he testified at great length as to defects in said construction and variations from the specifications, he further testified that he was intimately aware of every such defect and variation at the time of the entry of the consent decree. The action of the city's governing board in approving said work, in issuing and delivering warrants in payment thereof, in requiring the contractor to repair defective construction, and in approving the consent decree by having it entered upon the minutes of the council, must be held to be conclusive against the opinion of this or other witnesses as to defects in the work and the sufficiency of the contractor's attempted correction of those defects. The approval or rejection of the work and of the contractor's performance of his contract was a governmental function, and the manner of its exercise by the duly constituted authority will not be inquired into in the absence of fraud on the part of the local governing body. Herring v. Mexia (Tex. Civ. App.) 290 S. W. 792 (writ denied).

It is appropriate to repeat, generally, that the questions of the necessity for the improvements, of the benefits to accrue to the abutting property by reason of the enhancement of the value of that property, with relation to the cost of the improvements, of the sufficiency of the contractor's performance of the obligations assumed by him in the contract, were determinable by the governing board of the city, whose members were elected by the people and are accountable to the public for their official acts. It will be presumed that they acted honestly and in good faith in executing the trust confided in them as such of-

ficials, and their adjudication of these questions must be held to be conclusive, in the absence of fraud upon their part.

Appellants assert that some of the property assessed constitutes their homestead, that the lien created by the assessments cannot be lawfully imposed upon such exempt property, and that they were entitled in this suit to affirmative relief. The city is not asserting or attempting to enforce such lien in this suit, which therefore affords no occasion to adjudicate that question. Appellant's proposition 37 is overruled.

We have endeavored to dispose of all questions presented in the appeal. Those directly disposed of are embraced in the propositions specifically overruled, while those disposed of incidentally are presented in propositions not here specifically referred to, but which are nevertheless likewise overruled.

We conclude there was no material error in the trial below, and the judgment is ordered affirmed.