W. C. CLARK ET AL. v. W. L. PEARSON & CO. ET AL.

No. 5722.   Decided April 15, 1931.
Rehearing July 22, 1931.
(39 S. W., 2d Series, 27.)

*E. B.* and *Howell Ward,* of Corpus Christi, for plaintiff in error.

Clearly it must be conceded, as a matter of law, that the city could only consent to the judgment through the city council by ordinance or resolution passed and promulgated as permitted or required by law. King v. Guerra, 1 S. W. (2d) 375; Thorpe v. Blake, 171 S. W., 549.

A contract or agreement made by a municipal corporation—either county or city—is only valid or binding when made by or under authority of a resolution or order duly passed at a meeting of the legislative body of such municipality, and entered upon the minutes of such meeting. London, etc., Co. v. Beaumont, 139 S. W., 894; Fayette County v. Krause, 73 S. W., 51; Brian v. Page, 51 Texas, 534; Brown v. Reese, 67 Texas, 318, 3 S. W., 292; Wagner v. Porter, 56 S. W., 560.

It is elementary that the city could not, by a consent judgment, validate its unauthorized acts in levying the tax, issuing the warrants and in making the assessment, but the exact question has been definitely settled, and the courts, in effect, hold that a consent judgment is in no sense an adjudication. Kelley v. Town of Milan, 127 U. S., 139; Lawrence Mfg. Co. v. Jonesville Mills, 138 U. S., 552; Freeman on Judgments, 5th ed., p. 1100, 1545, 2767.

In addition to the fact that there is no foundation in law for charging interest on the assessments, there is no more reason than there would be for charging interest on ad valorem tax to be levied to pay bonds or any other obligation of the city. The assessments providing for interest do not come within the provisions of any of the statutes providing for the levy and collection of interest. Bell v. Gurlach Bros., 205 S. W., 470; Walker v. Alexander, 212 S. W., 713; Kirkpatrick v. Insurance Co., 299 S. W., 945.

*B. H. Kirk* and *H. J. Passmore,* of Robstown, and *Tarleton & Lowe,* of Corpus Christi, for defendants in error.

The City of Robstown, having less than 5,000 inhabitants, its governing body, in making a special re-assessment, under articles 1097, et seq. of the Revised Statutes, had the right to assess the entire cost of curb and gutter, and three-fourths of the cost of other street improvements, exclusive of street intersections, against the abutting property owners, providing such amount so assessed does not exceed the benefit such property receives therefrom by enhanced value thereto, determined on a basis of the condition of such improvements as it exists at the time of such re-assessment.

Re-assessments made on account of erroneous original assessment can legally provide for attorney's fee in default of payment, and such provision need not be stated in paving assessment notice.

Under the authorities it is quite clear that consent of the plaintiff to the entry of the judgment constitutes an effectual waiver of any right to disturb the said judgment on account of the matter in said assignment and in said propositions complained of. Duke v. Gilbreath, 10 S. W. (2d) 412; 34 C. J., 134, sec. 338; Lessing v. Cunningham, 55 Texas, 234; Sandoval v. Rosser, 86 Texas, 682, 26 S. W., 935. Forty-Acre Spring, etc., Co. v. West Texas B. & T. Co., 111 S. W., 417; Telluride Power Co. v. Teague, 240 S. W., 950; Lanier v. Blount, 45 S. W., 202; Parks v. Knox, 61 C. A., 493, 130 S. W., 203; Tait v. Matthews, 33 Texas, 112; McDaniel v. Monday, 35 Texas, 40; Hutchinson v. Owen, 20 Texas, 287; Laird v. Thomas, 22 Texas, 281; De Walt v. Snow, 25 Texas, 320. And, a judgment by agreement operates as an estoppel, although the pleadings would not, in a contested case, authorize judgment. Wynn v. Pig Stand Co., 16 S. W. (2d) 961; 34 C. J., 779, sec. 1198.

There is no dispute that the City of Robstown adopted articles 1086 to 1096, inclusive, and articles 1104 and 1105 of

the Revised Statutes. The governing body of said city therefore unquestionably had the right to improve the streets and sewers without a vote thereon, and to order the improvement of any highway therein, or part thereof, and to select the materials and methods for such improvement, and to contract for the construction of such improvements in the name of the city, and to provide for the payment of the cost of such improvements out of any available funds (Revised Statutes, art. 1087), same to be done wholly at the cost of the city, or partly by the city and partly by the owners of the property abutting thereon (article 1088, Revised Statutes), at the discretion of the governing body.

It seems to have been always conceded that municipal corporations are invested with the power to contract on the general credit of the city with respect to such improvements as they are authorized to make. The question was definitely settled in the case of Bridges et al. v. City of Lampasas et al., 249 S. W., 1083, where the authorities are discussed at length, and a very logical opinion rendered holding that cities incorporated under the general laws have authority to issue interest-bearing warrants in evidence of indebtedness lawfully created. In this case writ of error was refused by the Supreme Court, and in the case of Payne et al. v. First National Bank, 291 S. W., 209, it is also held that the authority given the city by Revised Statutes to construct bridges and improve streets included implied authority to make such improvements on credit, and to issue interest-bearing warrants for deferred payments, this being a case by the Commission of Appeals, Section A. Said authority being cited with approval and the doctrine reannounced in the case of Simms v. City of Mt. Pleasant, 12 S. W. (2d) 833.

MR. JUDGE SHARP of the Commission of Appeals delivered the opinion for the court.

For a partial statement of the nature and result of this suit we adopt the following statement made by the Honorable Court of Civil Appeals in its opinion:

"During the period in which the transactions involved in this litigation occurred, the city of Robstown, in Nueces county, embraced a population of more than 1,000 and less than 5,000 inhabitants. By vote of its inhabitants, said city accepted the benefits and adopted the provisions of chapter 9, tit. 28 of the present Revised Statutes (article 1086 et seq.), as provided in article 1104 thereof. Acting under the provisions of this chapter, the city council, by ordinances, ordered the paving of cer-

tain streets within the corporate limits and levied special assessments against owners of property abutting upon the streets to be so improved to cover the whole cost of curbs and gutters and three-fourths of the cost of paving, under the authority of article 1090, and within the limitations prescribed in article 1088. The council, also by ordinances, entered into a contract with W. L. Pearson & Co. to construct said improvements, and by virtue of the same article provided for the payment of the city's proportionate cost of such improvements, so contracted for, out of the available funds of the city, by appropriating 67 cents, or so much thereof as would be necessary, out of the annual ad valorem tax of $1.50. This debt was evidenced by the city's 6 per cent. interest-bearing warrants to be issued as earned, in favor of the contractor, to the amount of $200,000, or so much thereof as became necessary under the contract.

"Before all the warrants mentioned had been issued by the city and delivered to the contractors, W. C. Clark, owning property abutting upon one of the streets so improved, subsequently joined by certain other citizens in the same class, brought suit against the city and its officials and the contractor, alleging that the whole official proceedings to improve said streets, as well as the special assessments, the tax levy, the contract with Pearson & Co., and the warrants issued and to be issued, were invalid and void. * * * Subsequently all the parties to that suit settled and compromised the matters involved in that litigation, and their agreement was embodied in a consent decree, approved by the trial court, and duly entered as the judgment of the court. * * * This was on March 13, 1929.

"On May 7, 1929, the city, proceeding under article 1096, sought to correct the mistakes and invalidity in the original assessment, by reassessing the cost of the improvement.

"Some time during the month of April, 1929, W. C. Clark, plaintiff in the original suit, joined later on by those intervening in that suit, filed the instant suit to set aside the agreed judgment rendered in the former suit, alleging fraud in its procurement, and by amendment in May sought further to establish the invalidity of the paving proceedings, contract, warrants, assessments, reassessment, and levies thereunder.

"This cause was tried by jury, and, from an adverse judgment based upon a directed verdict against them, Clark and his associates have brought this appeal."

The Court of Civil Appeals affirmed the judgment of the trial court. For a more detailed statement of the nature and

result of the case we refer to the opinion of the Court of Civil Appeals. 26 S. W. (2d) 382. Writ of error granted.

Plaintiffs in error contend that the obligations issued by the city of Robstown were bonds and not certificates or warrants, were not authorized by a vote of the people of the town, were based upon a special ad valorem tax levy of 67c on the $100 valuation and were therefore void.

It is shown that the city of Robstown is an incorporated city with a population under 5,000 inhabitants, and that by a popular vote of the property taxpaying voters adopted what is now articles 1086 to 1096, inclusive, and articles 1104 and 1105, R. S., 1925.

By reason of the foregoing proceedings, that gave the city within its corporate limits, among other things, the following power:

(1) To pave the streets, improve any highway within its limits and construct sidewalks, curbs, gutters and sewers.

(2) The power to order improvements of any highway or part thereof within the city and to select the material and methods of such improvements and to contract for the construction of such improvements in the name of the city and to provide for the payments of such improvements out of any available funds of the city.

(3) The costs of making such improvements may be wholly paid by the city or partly by the city or partly by the owners of the property abutting thereon. In no event shall more than three-fourths of the cost of any improvement, except sidewalks and curbs, be assessed against such property owners or other property. The entire cost of construction of the sidewalks and curbs in front of any property may be assessed against the owner thereof or his property.

(4) The governing body of the city shall have power by ordinance to provide for the time and terms of payment of such assessments and the rate of interest not to exceed eight per cent per annum, payable upon deferred payments thereon, or to fix a lien upon the property and declare such assessments to be a personal liability of the owners of such abutting property. They shall have the power to cause to be issued in the name of the city assignable certificates declaring the liability of such owners and their property for the payment of such assessments and to fix the terms and conditions for such certificates.

Article 1090, R. S., in part, provides that:

"If any such certificate shall recite that the proceedings

with reference to making such improvements have been regularly had in compliance with law, and that all prerequisites to the fixing of the assessment lien against the property described in said certificate, and fixing the personal liability of the owner have been performed, such certificate shall be prima facie evidence of the facts so recited."

■ The city of Robstown having adopted, as required by law, the foregoing articles, the governing body of the city, under the provisions of the law governing same, unquestionably had the right to improve the streets and sewers without a vote thereon, and to order the improvements of any highway therein, or part thereof, and to contract for the construction of such improvements in the name of the city, and to provide for the payment of the costs of such improvements out of any available funds.

■ The law expressly authorizes the governing body of the city adopting the foregoing articles to issue in the name of the city assignable certificates declaring the liability of such owners and their property for the payment of same and to fix the terms and conditions for such certificates. Because the certificates or warrants have possibly some of the characteristics of bonds, does not make them bonds. That interest coupons are attached to them, as is ordinarily the case with bonds, is not controlling. Lassater v. Lopez, 110 Texas, 179, 217 S. W., 373; City of Tyler v. Jester, 97 Texas, 344, 78 S. W., 1058; San Patricio Co. v. McClane, 44 Texas, 392; Keel v. Pulte (Texas Com. App.), 10 S. W. (2d) 694.

■ Quoting from the opinion of the Court of Civil Appeals in this case, it is said:

"At the time of authorizing this debt, the city council provided for the liquidation thereof by levying an ad valorem tax of 67 cents, or so much thereof as should be necessary, to provide a sinking fund and to pay the interest to accrue upon said warrants, as required by familiar constitutional provisions. Under this general authorization of 67 cents, the council appropriated 30 cents of the $1.50 ad valorem tax in each of the first two ensuing years, and 46 cents for the third and last past year. The levy and appropriations thereunder were included in the ad valorem tax, and, with the funds derived from the special assessments, were segregated from the general fund and levy, and designated as a special fund to pay the principal of said warrants as they matured, and the interest thereon as it accrued from year to year. By this process the debt is being liquidated out of the city's 'available funds,' without raising

the ad valorem tax rate beyond the constitutional limitation of $1.50."

It is not shown that the tax levy made by the governing body of the city of Robstown exceeds the constitutional limitation of $1.50 upon the $100 valuation for taxable purposes.

Section 4 of article 11 of the Constitution of Texas reads as follows:

"Cities and towns having a population of five thousand or less may be chartered alone by general law. They may levy, assess and collect such taxes as may be authorized by law, but no tax for any purpose shall ever be lawful for any one year which shall exceed one and one-half per cent of the taxable property of such city."

The rule is well established that the city had the power to provide for the payment of its proportion of the cost of such improvements in interest-bearing warrants, without submitting the matter to a vote of the people. Keel, Mayor, v. Pulte (Texas Com. App.), 10 S. W. (2d) 694; Simms v. City of Mt. Pleasant (Texas Civ. App.), 12 S. W. (2d) 833; Bridgers v. City of Lampasas (Texas Civ. App.), 249 S. W. 1083 (writ refused).

The foregoing contention is overruled.

Plaintiffs in error further contend that the governing body of the city of Robstown had no authority to make a re-assessment of the cost of improvements, or any part thereof, against abutting property and its owners, because, in Cause No. 9848, entitled Clark et al. v. Pearson & Co. et al., pending in the district court of Nueces county, the original assessments had been decreed cancelled on the ground that they were "irregular and invalid."

In Cause No. 9848 W. C. Clark and others, owners of abutting property upon one of the streets improved in the town of Robstown, brought suit against the city, its officials and the contractor to declare the entire proceedings to improve the streets, the special assessments, the tax levy, the contract made with Pearson & Co. and the warrants issued and to be issued void and invalid. The record shows that this suit was compromised and settled. The matters involved in that suit and their agreement are embodied in a decree, agreed and consented to by all the parties, approved by the trial court and entered as the judgment of the court. We will set out the material parts of the judgment bearing upon the issues involved in this suit. It recites that on the 13th day of March, 1929, the cause came on for trial and all parties announced ready for trial and a

judgment entered therein, which, among other things, contains the following provisions:

"Thereupon came the parties in open court and announced that they had reached an agreement as to the judgment that should be rendered, and the Court then and there having heard and considered the agreement of the parties so announced, which agreement is in accordance with the judgment herein entered and agreed to by the parties, and the Court being of the opinion that the agreement is in all things fair and equitable, and, therefore should be entered as a decree and judgment of the Court."

The judgment further decreed that the special assessments made by the city "were irregular and invalid" and same were in all things cancelled.

The judgment further provides:

"That the contract entered into by the City of Robstown with the said W. L. Pearson & Company, was and is a binding and legal obligation and debt of the said city of Robstown, and the amount hereinafter adjudged to be owing, and that the warrants issued and to be issued as evidence of the said indebtedness in the amount of $181,014.02, are legal obligations of the City of Robstown and are in conformity with the constitution and the laws of this State; and that the work to be performed by said W. L. Pearson & Company under said contract has been performed in accordance with the terms of said contract, and has been approved and accepted by the City of Robstown through its proper authorities."

Again it provides:

"Whereas there has been delivered heretofore to the said W. L. Pearson & Company warrants in the amount of $155,-000.00, it is adjudged that said warrants so delivered are in all things legal and valid; and the City of Robstown is hereby ordered to issue the undelivered warrants provided for in the said contract, to-wit: the sum of $26,014.02, in addition to the $155,000.00 in warrants heretofore delivered and to deliver the said warrants to the said W. L. Pearson & Company."

Article 1095 R. S. provides that:

"The governing body of any city shall be empowered to correct any mistake or irregularity in any proceedings with reference to such improvement, or the assessment of the cost thereof against abutting property and its owners, and in case of any error or invalidity, to reassess against any abutting property and its owner the cost or part of the cost of improvements, subject to the terms hereof, not in excess of the benefits

in enhanced value of such property from such improvement, and to make reasonable rules and regulations for a notice to and hearing of property owners before such reassessment."

Article 1097 provides for a special assessment as follows:

"In any case in which the public funds of a city or town may have been or may hereafter be expended, or its vouchers or certificates issued to any contractor, or any contract made therewith, for the special improvement, raising or lowering the grade of, opening, straightening, widening, paving, constructing or grading of any street, avenue, alley, sidewalk, gutter or public way, or any part thereof, and if for any reason, no part of the cost of such improvement has been borne by the abutting property or paid by the owner or owners thereof, either because an attempted assessment and enforcement thereof for the same was erroneous or void, or was so declared in any judicial proceeding, the governing body shall have the power to proceed at any time to specially assess or reassess, such abutting property with such amount of the cost of such improvement as it deems proper, but in no event shall the amount exceed the special benefits such property receives therefrom by enhanced value thereto, the amount of such special benefits to be determined on a basis of the condition of such improvement as it exists at the time of such assessment or reassessment."

Article 1101 provides that:

"Any such assessment or reassessment made by the governing body of any city or town with less than five thousand inhabitants may equal the entire cost of sidewalk, curb and gutter, and the cost of any street improvement, exclusive of street intersections, and such governing body of such town in making such assessment or reassessment, shall follow the procedure prescribed in articles 1082 and 1083 in so far as applicable, but no such assessment or reassessment shall be made in excess of the special benefits in enhanced value conferred thereby on the property abutting such improvement, or until the owner or owners of such property shall have had notice, as provided above, and opportunity to contest such issue before such governing body under such rules and regulations as it may, by ordinance prescribe."

Article 1103 read as follows:

"The provisions of the six preceding articles relating to special assessments or reassessments are cumulative of all powers heretofore granted to any city or town either by general or special law; and all charter provisions of all cities and towns

in this state heretofore adopted relative to the subject covered by this law are hereby validated."

The contract entered into between the city of Robstown and Pearson & Company, whereby Pearson & Company were to do the improvements for the city, was dated June 7, 1926. This contract was ratified and confirmed by the city council of Robstown by resolution dated the 7th day of June, 1926. As shown above in Cause No. 9848, a judgment dated March 13, 1929, was entered by agreement of all parties in that suit. It will be noted that in that judgment, among other things, it was decreed that the special assessments theretofore made by the city were "irregular and invalid"; that the contract between the city and Pearson & Company was "a valid and legal obligation and debt of the city"; that the warrants issued or to be issued by the city in the sum of $181,000 "are legal obligations of the city of Robstown and are in conformity with the Constitution and laws of this State; that the work to be performed by said W. L. Pearson & Company under said contract has been performed in accordance with the terms of said contract and has been approved and accepted by the city of Robstown through its proper authorities"; that warrants in the amount of $155,000 already delivered to Pearson & Company "are in all things legal and valid" and the city was ordered to issue and deliver additional warrants in the sum of $26,000 to cover the balance due said contractors for the work they had done under the contract. The judgment further provides that said judgment is "in all things fair and equitable." It will be observed that there is nothing in the judgment which would prohibit the city of Robstown from complying with the provisions of article 1097 R. S., above quoted.

On April 3, 1929, the city council adopted the re-assessment ordinance for the purpose of correcting the irregularities in the prior assessment made by the city. It is recited in the ordinance that the improvements have been fully completed and the "contract adjudged valid and fully and properly performed and said vouchers or warrants adjudged legal and valid obligations of the city of Robstown."

The city council further found "that said re-assessment was just and equitable, and that the charge made against each parcel of property in said re-assessment is less than the benefits to said property by means of enhanced value thereof by reason of said improvement."

The city warrants issued contain the following provision:

"And it is hereby certified and recited that all acts, condi-

tions and things required to be done precedent to and in the issuance of this warrant, have been properly done, happened and performed, in regular and due time, form and manner, as provided by law, and that the total indebtedness of said city, including this warrant, does not exceed the constitutional or statutory limitation."

■ The rule is well established that municipal corporations are invested at least with an implied or incidental power to contract on the general credit of the city with respect to such improvements as they are authorized by law to make. Keel v. Pulte (Texas Com. App.), 10 S. W. (2d) 694; Lassater v. Lopez, 110 Texas, 189, 217 S. W., 373; Payne v. Bank (Texas Com. App.), 291 S. W., 209, 211; City of Galveston v. Loonie, 54 Texas, 517; City of Galveston v. Heard, 54 Texas, 420; Graves v. M. Griffin, O'Neill & Sons (Texas Civ. App.), 189 S. W. 778; Biddle v. City of Terrell, 82 Texas, 335, 18 S. W., 691; City of Terrell v. Dessaint, 71 Texas, 770, 9 S. W., 593; Police Jury, Tensar Parish, v. Britton, 15 Wall., 566, 21 L. Ed., 251; Clairborne County v. Brooks, 111 U. S., 400, 4 Sup. Ct., 489, 28 L. Ed., 470; Allen v. LaFayette, 89 Ala., 641, 8 South., 30, 9 L. R. A., 497; Hoffman v. Pawnee County, 3 Okl., 325, 41 Pac., 566, 19 R. C. L., p. 779, sec. 84.

■ It is now equally well settled that cities incorporated under the general laws of the state have authority to issue interest-bearing warrants or certificates in evidence of indebtedness legally created. Keel v. Pulte, supra; City of Corpus Christi v. Woessner, 58 Texas, 462; City of Tyler v. Jester (Texas Civ. App.), 74 S. W., 359; Id., 97 Texas, 344, 78 S. W., 1058; Noel v. City of San Antonio, 11 Texas Civ. App., 580, 33 S. W., 263; Payne v. Bank, supra.

It appears from this record that the city of Robstown is incorporated; that by special election its citizens have adopted the statutes which permit the city to improve its streets and highways. The improvement of highways and city streets is of a great public concern and is recognized as a public necessity and duty; the Legislature from time to time has enacted laws giving cities, under certain conditions, the authority to improve their highways and streets and those laws should be rationally and sensibly construed as to accomplish the object for which they were enacted. The primary rule governing the construction of statutes in this state is that "the provisions thereof shall be liberally construed with a view to effect their objects and promote justice."

■ Under the state of this record we think the city of Robstown was authorized under the law to re-assess the property as was done. This act did not violate any of the provisions of the federal or state constitutions. Booth v. Asphalt Company (Texas Civ. App.), 296 S. W., 345 (writ refused); City of Dallas v. Atkins, 110 Texas, 627, 223 S. W., 170; Childress v. Carwile (Texas Com. App.), 235 S. W., 543; Texas Bitulithic Co. v. Henry (Texas Civ. App.), 197 S. W., 221; Gallaher v. Whitley (Texas Civ. App.), 190 S. W., 757; Beatty v. Construction Co. (Texas Civ. App.), 275 S. W., 716.

Article 1091 R. S. provides that "nothing herein shall be construed to empower any city to fix a lien by assessment against any property exempt by law from sale under execution, etc." It is not contended that anyone is undertaking to establish in this suit a lien against any property claimed as exempt and that question is not involved here.

We have carefully considered the many points raised by plaintiffs in error and we have found no sound reason for holding, in view of this record, that the governing body of the city of Robstown has not substantially complied with the law in making the contract for the improvements, issuing certificates therefor, and making a re-assessment against the property liable for the improvements made.

The judgment of the Court of Civil Appeals should be affirmed.

The foregoing opinion is adopted as the opinion of the Supreme Court, and judgment will be entered in accordance therewith.

C. M. CURETON, Chief Justice.