**URRUTIA et ux. v. URRUTIA.**

No. 4004.

Court of Civil Appeals of Texas. El Paso.

May 16, 1940.

Rehearing Denied June 13, 1940.

Spears, Conger, Baskin & Spears, of San Antonio, for appellants.

Ladon & Finch, of San Antonio, for appellee.

WALTHALL, Justice.

This case involves the custody of a minor child, a girl, Maria Amapola Urrutia, born to Adolfo and Anna Maria Trevino de Urrutia, husband and wife, and appellants herein.

The case was begun by appellants by filing in the court on July 12, 1939, an application for a writ of habeas corpus, in which they sought the care, custody and control of said child from appellee and her former husband, Carlos Urrutia, a brother of appellant Adolfo Urrutia.

The case was tried to the court without a jury. The court made and filed findings of fact and conclusions of law, from which, and from the uncontroverted facts in the record generally, we more briefly than in the record state the pertinent facts of the case.

Appellants are the natural parents of the minor child, Maria Amapola Urrutia. Appellants were legally married on January 4, 1932. The child, the subject matter of this suit, was born to appellants in San Antonio, Texas, on November 14, 1932, at

the home of the father of appellant Adolfo Urrutia. The child was named Maria Amapola Urrutia; the child is now called Elizabeth Poppy Urrutia at the home of her adoptive parents.

On January 6, 1933, with the consent, expressed in writing, by the parents of said child, the consent in writing filed in the adoption proceedings, appellee Elizabeth Jones Urrutia filed an application in the District Court of Bexar County to adopt the child in controversy and, after an investigation and report, on February 6, 1933, the court entered an order granting leave to Carlos Urrutia and wife, Elizabeth Jones Urrutia, to adopt the said child, the judgment order of the court reciting: "that said adoption be, and is hereby effective as of this date, and that all legal relationship and all rights and duties between said child and its natural parents are hereby ended and determined, and that said child shall from henceforth be deemed and held to be the child of said petitioners and each of them, as fully as though born to them in lawful wedlock."

The trial court then and in that connection found that all of said adoption proceedings fully and legally conformed to the statutes of this State in effect pertaining to the adoption of children, and that the judgment was final, meaning, as we understand it, that there had been no change or modification of the judgment or appeal therefrom.

The trial court found that a divorce was granted in 1937 by the District Court of Bexar County to Elizabeth Jones Urrutia against Carlos Urrutia, and that in the divorce decree the court entered an order that Elizabeth Jones Urrutia be given full and exclusive custody and control of said child. The court also found that about January, 1935, a second child (apparently of appellants) known as Mary Sharlene Urrutia, had been adopted by Carlos and Elizabeth Jones Urrutia, and had been under the sole and exclusive care, custody, control and possession of said Elizabeth Jones Urrutia.

The court found that since the above mentioned decree of divorce, under said decree, Carlos had made payments for the support of the two children, and at great length and in detail as to the facts made other findings as to the two children, which findings we think are not necessary to state here, other than to say that the child involved here had received the best

of care, and that Elizabeth Jones Urrutia had bestowed upon her the affection and attention of a natural mother, and had brought the child up in a clean and wholesome atmosphere at school and elsewhere, the court finding that the bond of affection between the child and the adoptive mother was notably great; and in fact the circumstances and conditions of the two children are such that "it would be detrimental to the best interest and future welfare of the child to be taken from the appellee, and the court in the findings stated the plans appellee had in contemplation for the child." Such future plans, however, are not before us for consideration.

We think, in justice to appellants, to state that the evidence clearly shows that during all of such times the appellant Adolfo Urrutia had to and did depend upon his father and his brother Carlos Urrutia for financial maintenance and support for funds with which he attended Tulane University; that in June, 1934, subsequent to such adoption said appellant completed his University course, and began the service of a one year interneship at Robert B. Green Hospital in San Antonia, Texas, for which services he received only $10 per month, and that during all of such time he was still dependent upon his father and brother for his maintenance and support.

The evidence shows, we think, though not in the findings of the court, that appellants are at this time financially able to properly care for the child in controversy.

The trial court concluded that it would be to the advantage and best interest of the child to permit it to remain in the care, custody and control of the respondent, Elizabeth Urrutia, and so ordered.

After the evidence was concluded the trial judge wrote a letter, made a part of the record, addressed to the attorneys on both sides of the case, in which he earnestly requested that the case be appealed, "so that the three Judges of the Court of Civil Appeals might assist by lending their mature judgment to the solution of the problem" involved.

The case is now before us on appeal.

For brevity we will designate the parties in the suit as appellants and appellee as in the briefs.

The evidence in this case covers 371 pages of the record. Appellants submit eighteen propositions in support of their contention that the best interest and future

welfare of the child involved in this controversy would be subserved by restoring the child to appellants, the child's natural parents. Appellants' first eight propositions are based upon what appellants contend to be an "erroneous and prejudicial finding of fact," and to the effect that when appellee first took possession of the child for the purpose of adoption, the court found that "the said child was ill and that Elizabeth Jones de Urrutia nursed the child day and night for a period of some six months until the said child became a strong, sturdy and healthy baby; that there were illnesses common to children, and that through all of these illnesses the said Elizabeth Urrutia, sometimes with the aid of a nurse and sometimes without, tended to, treated and nursed the said child, Maria Amapola Urrutia."

The propositions are to the effect that the finding is not sustained ·by the evidence and should be disregarded by this court; that the finding is probably made the basis of other findings.

We have studied the entire record, and believe from the great mass of evidence the finding is sustained and is not erroneous to.the extent claimed. Without stating ·the evidence, it tends to show that, in addition to a stomach trouble, it was necessary that the. child wear a truss or navel belt until she. was about five years old. Another witness than appellee said the child was very ill, her limbs were tiny, her abdomen was distended, and that she did not think the child would live.

The trial court found that "to destroy its present relationship would work a great and unnecessary hardship on the child and might materially affect its future; that the child's welfare might be greatly impaired by making any change in its relationship due to the fact it had been and was growing up as a member of the family of the respondent." The court further found that the child "knows no other mother or parents, and that it would be much to the advantage of the child to permit it to remain in the custody of Elizabeth Urrutia, respondent, who is in all respects better suited and better fitted to have the care, custody and control of the child than petitioners." It is true that the court, in his letter to the attorneys above referred to, stated that, "the evidence in this case shows all parties to be good, substantial people, and that little Poppy has two good homes available to her." We do not think

the statements inconsistent with each other. The court, as we conceive it, was simply grouping the facts that go to make up an ultimate issue to be decided by the court, the grouping of the facts must be distinguished from the issues upon which the court bases the judgment.

No question was raised in the trial court or is suggested here that the child was in all'respects legally and effectively adopted, or that she is not properly in the care and control of appellee, other than as claimed by appellants under the issues in the present suit.

The present statute pertaining to the adoption of a child is Article 46a of Vernon's Ann.Civ.St., and omitting all sections under said article prior to Section 9, which Section 9 states the status of the adopted child, the pertinent portions of that section to the facts of this case we state. The section is lengthy, and we state only such portions thereof as seem to apply to the issues here, the present right of the litigants to have the care and custody of the child involved in the controversy as against appellee, the adoptive parent, under the evidence and facts found by the trial court.

Section 9 of the article reads: "When a child is adopted in accordance with the provisions of this Article, all legal relationship and all rights and duties between such child and its natural parents shall cease and determine * * *. Said child shall thereafter be deemed and held to be, for every purpose, the child of its parent or parents by adoption as fully as though born to them in lawful wedlock. Said child shall be entitled to proper education, support, maintenance, nurture and care from said parent or parents by adoption, and shall inherit from said parent or parents by adoption, and as the child of said parent or parents by adoption, as fully as though born to them in lawful wedlock; subject, however, to the provisions of this Act."

 Section 7 of Article 46a provides that nothing in this Act shall prevent a court of competent jurisdiction from taking away from such adoptive parent the custody of the adopted child and awarding the child to the natural parents upon proof of the bad moral character of such adoptive parent, or upon proof of abuse, neglect or ill treatment of such adopted child by the adoptive parent, but even prior to the

provision of Section 7, the courts have not hesitated to exercise such power. At all times the best interest of the child has been considered the primary consideration. Legate v. Legate, 87 Tex. 248, 28 S.W. 281. Nor is such power limited to the precise grounds stated in the above stated section of the statute. Rayon v. Landry, Tex.Civ.App., 289 S.W. 745. But certainly the statute contemplates that there must be proof of some fact or facts, whether of bad moral character of the adoptive parent or proof of abuse, neglect or ill treatment of the adopted child by the adoptive parent, that satisfies the trial court such custody of the adoptive parent is not for the best interest of the child; otherwise, the statute as to adoption would be meaningless.

We have found nothing in the record that tends to establish any such fact, circumstance or condition that should suggest to the trial court to take the child from the custody of the adoptive parent and award its custody to the natural parents.

The power of the court to exercise such jurisdiction, we think, must be found in the proof. Here such fact, circumstance or condition is neither found in the pleading nor in the evidence, and such is manifest in the court's finding.

While we greatly sympathize with the natural parents of the child in their desire to have the child in their home, the duty of the trial court and of this court is to declare and administer the law of adoption as we find it to be.

We have carefully reviewed and considered each and all of the exceptions presented in appellants' brief and believe they show no reversible error.

The case is affirmed.

## On Motion for Rehearing.

In the opinion this Court referred to the second child, Mary Sharlene Urrutia, adopted by appellee as "apparently" the child of appellants. This was error. Mary Charlene was not the child of appellants, and we here correct that statement. For some reason she was mentioned in the suit as adopted by appellee, but no judgment was rendered as to Mary Sharlene.

Eliminating the reference to her as apparently the child of appellants, the motion in all other respects is overruled.