**AUSTIN et al. v. COLLINS et ux.**

No. 14815.

Court of Civil Appeals of Texas. Fort Worth.

Feb. 14, 1947.

Rehearing Denied March 28, 1947.

James H. Knapp, of Arlington, and Eva Barnes and Arthur Lee Moore, both of Fort Worth, for appellants.

Jack Carter, Clyde C. Thomas and Garrett Middlebrook, all of Fort Worth, for appellees.

J. Everett Cline and Sproesser Wynn, both of Fort Worth, amicus curiae.

SPEER, Justice.

This is an appeal from an adverse judgment entered at a non jury trial wherein Charlene Austin and husband Elwood Austin sued Clarence L. Collins and his wife, Laura Mae Collins. Plaintiffs sought dual relief; namely: (1) Review and setting aside of a judgment of adoption for specified reasons, and (2) By habeas corpus to recover custody of a child.

The record before us, in chronological order, shows the following matters leading up to the judgment from which this appeal was prosecuted: Charlene Bice (now Charlene Austin) was 18 years old and unwed, living in another part of the state. She was soon to become a mother; she went to Fort Worth to live in the home of her grandmother about April, 1945; there she and her grandmother discussed the future of herself and her baby that was to be born. They decided she would go to the "Volunteers of America" an institution rendering benevolent aid in such cases and where babies left there for that purpose were placed by adoption in suitable homes. She intended to leave her baby with that institution if it could not be placed, by agreement with adoptive parents, where she could see it occasionally. In the meantime, the grandmother was to locate such private home for the baby if she could do so. The young prospective mother did not want to leave her baby at the benevolent home, where it would be adopted out to some person where she would not know what became of it, but would do so if it could not be avoided. The baby was born July 26, 1945.

About two weeks before its birth the grandmother contacted a close neighbor, Mrs. Laura Mae Collins, who had an adopted 5 year old daughter and wanted another baby to adopt; the grandmother and Mrs. Collins went to Volunteers of America and contacted Miss Bice; it was there definitely agreed between Miss Bice and Mrs. Collins that the latter should take the baby and adopt it and permit Miss Bice to visit it "once in awhile." Miss Bice seemed delighted with the arrangements.

When the baby was about two weeks old, on August 8, 1945, Mrs. Collins went to the Home and took the baby and Miss Bice away with her; they went by the office of an attorney where the whole situation was fully explained, and had a full and complete consent agreement drawn, by the terms of which Mrs. Collins and her husband Clarence L. Collins could adopt the baby at once. This agreement bore date of August 8, 1945, and was signed by Miss Bice, and duly acknowledged before a Notary Public.

On September 5, 1945 (without the aid of next friend or guardian ad litem), Miss Bice filed an application for an injunction to restrain the Collinses from adopting the child. Notice of that suit was served on the Collinses on September 6, 1945. On that day Miss Bice and her father and mother went to the home of Mrs. Collins and when Mrs. Collins expressed surprise at the action, a rather heated conversation followed, especially with the girl's father and Mrs. Collins. Their differences apparently subsided during the conversation and it was agreed that Miss Bice would dismiss her injunction case and that the Collinses could go on and adopt the child at an early date. Mrs. Collins, Miss Bice and her father and mother went immediately to the office of an attorney where a short instrument, denominated a "contract" was drawn by the terms of which Miss Bice agreed to dismiss her injunction suit and again agreed that the Collinses could proceed with their adoption suit. This instrument bore date of September 6, 1945, and was signed by Miss Bice, her father and mother, and by Mr. and Mrs. Collins.

On September 25, 1945, Mr. and Mrs. Collins filed application in Cause No. 50459-A in the 96th district court of Tarrant County, to adopt the baby; it had attached the consent agreement by Miss Bice of date August 8, 1945. Based on the consent agreement applicants asked that the court waive the six months probation provision in Sect. 3 of Article 46a, Vernon's Texas Civil Statutes. The court named an investigator and set a final hearing for September 25, 1945; on that date the favorable report of the investigator was considered and approved by the court. On the same day the court entered an order of adoption by the Collinses; the order further provided for the change of the baby's name from Clifford Lisle Bice to Clifford Lisle Collins.

On November 11, 1945, Charlene Bice was married to Elwood Austin. On February 15, 1946, the Austins filed this case in the 96th district court of Tarrant County under docket No. 50459-A seeking the relief first above set out in this opinion. We shall refer to the Austins as appellants and to the Collinses as appellees.

On the phase of appellants' claim for a review of the judgment of adoption, their grounds may be summarized as claiming: That at and before the adoption proceedings Mrs. Austin, (then Miss Bice) was a feme sole and a minor being less than twenty one years of age; that her disabilities as such minor had not been removed by court action nor by marriage; that she had no notice or other process served upon her when the adoption case was heard, and that she had not given her consent for the adoption of her child. There were other allegations of threats, fraud and coercion by Mr. and Mrs. Collins but no complaint is made here of any error committed by the trial court in holding adversely to those contentions. They require no further notice.

 If the adoption consent agreement signed by Miss Bice when she was under 21 years old was effective, there is no merit in her contention that the adoption proceedings were void or voidable because she was not served with notice of the proceedings when the adoption suit was filed by the appellees. There is no provision of law by which the natural parents of a child shall be named as parties to an action for adoption; and no provision for notice or process to them in such cases where they have consented to the adoption. If they still have custody and control of the child it is essential that they consent to the adoption, which consent is sufficient notice of the adoption proceedings. Fitts v. Carpenter, Tex.Civ.App., 124 S.W.2d 420; Pearce v. Harris, Tex.Civ.App., 134 S.W. 2d 859; Matthews v. Whittle, Tex.Civ. App., 149 S.W.2d 601. A consent for adoption may be withdrawn by the one making it at any time before it is acted upon by the court. (Fitts v. Carpenter, supra.) It is not contended here that Miss Bice withdrew her consent agreement prior to the time the court acted upon it when the judgment of adoption was entered.

The points of error brought to this court upon which reversal is sought are in substance: (1) Since Article 46a, section 6, Vernon's Texas Civil Statutes, provides that no adoption of a minor child is permitted except with the written consent of the living parents of the child, and since the

mother of this child was only 18 years of age at the time she is alleged to have given her consent and she was unwed, the judgment of the 96th district court allowing the appellees to adopt the child was void. (2) That under the conditions set out in first point, the judgment of adoption was voidable. (3 and 4) Court erred in awarding custody of the child to the appellees and not to appellants and in holding that the best interest of the child was for the appellees to retain its custody.

The first two points, which are substantially the same, have given us much concern in a disposition of this case. It is certain that Mrs. Austin (then Miss Bice) was only 18 years of age when she signed the consent agreement. Did her age render the consent either void or voidable? Our statutes relating to adoption are found in Article 46a and the nine sections thereof, Vernon's Texas Civil Statutes. Section 6 was amended in 1937 by 45th Legislature, p. 1324 and now appears in the above cited article.

■ Section 6 of Article 46a as amended now provides in substance, that no adoption shall be permitted except with the written consent of the living parents of the child. It goes on to provide that if parents have abandoned said child to another for a period of two years, the child may be adopted without the written consent of the living parents. The Act further provides that "In case of a child not born in lawful wedlock the consent of the father shall not be necessary." It is the last quoted part of the Act that is most applicable here. The quoted provision does not specifically provide that the adoption can take place upon the written consent of the unwed mother, but we have no trouble in concluding that the plain implication by the legislative act is that the written consent of the unwed mother is essential to adoption.

At all times since Texas became a member of the Union, our legislatures and the courts have diligently shown a deep solicitude for the children within our borders who were victims of circumstances for which they were in no way responsible. With the belief that human love for the race and a sound public policy demanded it, our law making body has passed laws designed to aid such unfortunate children by adoption into homes suited to making of them useful men and women and to remove them as nearly as is humanly possible, from the shame and disgrace that are so sure to haunt them in years to come. All of this cannot be accomplished but we can approach the coveted goal as nearly as man-made laws are able.

■ Our adoption laws have been amended from time to time during our almost a century of Statehood. Our courts have found many opportunities to write well in the interest of innocent children where their destinies have been the subject of legal controversy. The rule has been uniformly declared to be that the best interest of the child or children shall be of first importance to the court. The general rule is so well known that we think it unnecessary to attempt a listing of such declarations by our courts. It is difficult to perceive of the rigid enforcement of such a wholesome doctrine without virtually breaking the already taut heart strings of some one or more of the litigating parties. Such arduous situations are not of the court's making but that of the litigating parties. Courts find no pleasure in the enforcement of a principle which always makes someone unhappy.

We have not been cited to any case in this state, nor have we been able to find one where the precise question before us has been decided. In their briefs the parties have cited more than 150 authorities, some of which bear persuasively but remotely on some phase of a proposition illustrating reasons why we should view the situation from their respective view points.

■ We must construe the adoption statute in this state, by the well known rules of construction, and ascertain if we can the legislative intent when the laws were passed. Some of these rules require that we familiarize ourselves with surrounding conditions at the time and the public policy prompting the passage of an Act to accomplish a given purpose. Harris v. City of Ft. Worth, 142 Tex. 600, 180 S.W.2d 131; Board of Insurance Commissioners v. Sproles Motor Freight Lines et al, Tex.Civ. App., 94 S.W.2d 769, writ refused; Wor-

tham v. Walker, Commissioner, 133 Tex. 255, 128 S.W.2d 1138. We should not give to a statute such a construction as will throw the law into a state·of confusion if it can be fairly said that the legislature had expressly or necessarily implied some other purpose. Trimmier v. Carlton, 116 Tex. 572, 296 S.W. 1070. Provisions of a statute will be liberally construed to effectuate the purposes intended by the legislature and to promote justice. Clark et al. v. W. L. Pearson & Co., 121 Tex. 34, 39 S.W. 2d 27. A construction of a legislative act should not be given that would render the act absurd or even meaningless, when a rational, expressive and wholesome meaning may be ascertained from the language used. Texas & Pacific Railway Co. v. Taylor, 54 Tex.Civ.App. 419, 118 S.W. 1097, affirmed by Supreme Court, 103 Tex. 367, 126 S.W. 1117.

Applicable to the validity of the consent agreement executed for adoption of her child, by appellant Charlene Bice when she was less than 21 years of age, the above general rules must be observed. It has long been the policy of our laws to afford protection to minors, who are lacking in judgment and understanding sufficient to guard their own interests. Generally speaking ·it is the policy of our laws not to hold minors responsible for their acts until they have reached that degree of intelligence and discretion which will enable them to judge correctly of their own rights and interests. 23 Tex.Jur. 698 sect. 4. Those less than 21 years of age, except in specially excepted cases, are treated by our laws as "infants", but this by no means is to say that one who has attained an age and intelligence sufficient to weigh his acts cannot be bound merely because he lacks a short period of being 21 years of age; but that, for some purposes the law necessarily recognizes that actual capacity to act in matters that involve legal consequences increases from babyhood to adult age. 23 Tex. Jur. 701 sect. 6. For instance, at the age of 14 an infant has the right to choose his own guardian. Art. 4126, R.C.S. Females under 14 years of age and males under 16 are forbidden to enter into the marriage relation. Art. 4603, R.C.S. This inhibition does not prevent a legal marriage if the female be more than 14 years of age, under a construction of the cited article. Norvell v. State, Tex.Cr.App., 193 S.W.2d 200.

■ A minor may hold public office if its functions require only ministerial duties and involves duties for the exercise of skill and intelligence only. He therefore may serve as deputy county clerk. If the minor be a parent of a child, he may be appointed guardian of such child, notwithstanding his nonage. 23 Tex. Jur. 702, sects. 7 and 8. Moreover, by the provisions of Sect. 6 of Art. 46a, Vernon's Texas Civil Statutes, if the child to be adopted is 14 years old or over, his written consent must be obtained in the presence of the court, before he can be adopted. Again we may observe that the wording of the statute does not in so many words say that a child 14 years old or over, although a minor, may give his consent to adoption, yet we do the language used, no violence when we construe it to mean that he may give his consent to adoption.

It has many times been held by our courts that the parents are obligated to support and maintain their child or children. 31 Tex.Jur. 1301-2, sect. 27 and authorities cited. No distinction is made relative to the age of the parent. We take this to mean that the same duty devolved upon this unwed mother to support and maintain her child as if she had been of full age.

■ The recognized parental right of control of a child is not a property right in the ordinary sense of the term, and it follows that a parent may not bargain, sell or otherwise bequeath such right. 31 Tex. Jur. 1289 sect. 13. We mention this for the reason an analogy is attempted to be presented to us in Miss Bice's consent agreement for the adoption, and her capacity to contract as a minor. In this connection we observe that under our laws, not all of the contracts made by minors are void or even voidable by any means. It is generally conceded that a minor may bind himself and his estate for the purchase of necessaries to the extent of their actual values and also by those obligations incured pursuant to statutory obligations such as the support and maintenance of his or her children, irrespective of the age of

the parent. The latter type of obligation was recognized in Clemmer v. Price, 59 Tex.Civ.App. 84, 125 S.W. 604, writ refused.

We have already observed that Mrs. Austin, while yet a minor and unwed, was legally bound for the support and maintenance of her child. She testified that she intended when she went to Volunteers of America, that if she could not make some other satisfactory arrangement for adopting the child into a home of her choice, she would leave it with that benevolent institution for disposition. If she had so left it with the Home, or having consented to its adoption by appellees as she did where she could see it "once in a while" as she put it, she relieved herself of a legal duty to support and maintain the child. It cannot be seriously contended that because a parent is less than 21 years of age, he or she is relieved of the responsibility of the child's support.

Again we advert to Section 6 of Art. 46a, V.T.C.S. Following that part which states that no adoption shall be permitted except with the written consent of the living parents, we find this provision: "Provided however, that if a living parent or parents shall voluntarily abandon and desert a child sought to be adopted, for a period of two (2) years, and shall have left such child to the care, custody, control and management of other persons, * * * then in such event it shall not be necessary to obtain the written consent of the living parent or parents * * *." But adoption will be permitted on the written consent of the county judge of child's residence. Certainly it could not be successfully contended in this case, that if Miss Bice had taken the option to "leave" the baby with Volunteers of America, for disposition by that institution, the child could not have been legally adopted under the provisions of the statute just quoted, merely because she was not 21 years old when she chose to so leave, abandon and desert the baby to its fate.

The very nature of the unfortunate situation confronting Miss Bice when her baby was born, relating to the baby's disposition and maintenance, was one very personal to her. There is no law, in so far as we know, for choosing some other person to speak and act for her in such matters. She is shown to be a young woman with at least normal maturity and intelligence. When she gave her written consent for the adoption of her baby, she was evincing a normal motherly instinct of her love and affection for her child. She chose, not to abandon and desert it to its uncertain fate, but to have a voice in who should have its cares and responsibilities along with the joy and happiness that would naturally follow to those who, like herself, would love it. Pursuant to this worthy sentiment, she, no doubt, chose the better course, by placing it into the home of appellees, shown to be suitable in every way and where she could have the rare privilege of visiting it when she chose to do so.

Preusse et ux. v. McLerran et al., Tex. Civ.App., 282 S.W. 293, writ dismissed, was a habeas corpus proceeding to recover custody of a child, born to the wife relator when she was 17 years old and unwed. She verbally gave the baby to respondents and they kept the child under that arrangement for at least more than three years and adopted it in due form on March 12, 1925. Mr. and Mrs. McLerran married in December 1924. The McLerrans instituted the habeas corpus action in April, 1925. The adoption proceedings apparently were not attacked because of the minority of Mrs. McLerran when she gave the baby away; but the child's custody was sought upon the ground that Mrs. McLerran was its natural mother and a suitable person to have its care and custody. The action was defended upon the grounds of the gift of the child and its custody for three years or more and its legal adoption. The controversy was largely which of the parties were best suited to have custody. The trial court left custody with the adoptive parents but provided in his judgment that the award was without prejudice to a subsequent action under changed conditions. The appellate court reformed the judgment eliminating the portion relating to subsequent actions and affirmed it, denying to relators the relief sought.

We have mentioned the last cited case more for the purpose of showing that although it was apparent to the court that the mother of the child was a minor when she gave it to the adoptive parents, the court took no cognizance of her age at the time. Nor indeed, did relators urge her nonage as a ground for avoiding the gift and adoption. The case more nearly recognizes the minor mother's capacity to abandon and desert her child to another at the age shown.

Revised Statutes of Kansas 1923, effective since 1868, under Title "Infants" and adoption, at section 38—105, provided:

"Any parent may, with the approval of the probate judge of the county where such parent may reside, first obtained in open court, relinquish all right to his or her minor child or children to any other person or persons desirous of adopting the same, and shall not thereafter exercise any control whatever over such child or children so relinquished; * * *." The article goes on to confer exclusive custody, right and control with the adoptive parents. While that statute was effective in 1891 the Supreme Court decided and handed down the opinion In re Bush, 47 Kan.Sup. 264, 27 P. 1003. In that case it appears that a 17 year old unwed woman gave birth to a child and went before the Probate Judge of the county, and as provided by the cited statutes, relinquished her rights to the child to the prospective adoptive parents, who in turn adopted the child. Later the young mother married and sought to have the adoption proceedings set aside because of her nonage at the time. The trial court set the proceedings aside, but required of the mother to make payment to the adoptive parents of a small sum of money. She was unwilling to make payment and abandoned that forum and instituted another action; the adoptive parents pleaded the adoption and relators pleaded the judgment setting it aside on account of nonage of one of the relators. The Supreme Court refused to consider the judgment last rendered in the probate court setting the adoption aside and treated the case from a standpoint of the best interest of the child and denied relief sought by relators.

The same Kansas Statute, at section 38—102 contains a provision to the effect that a minor is bound by his contracts, not only for necessaries but by all other contracts made by him, unless he disaffirms them within a reasonable time after he attains his majority and makes restitution to the other party.

Based upon the holding in the last cited Kansas case, such authorities as, 2 C.J.S., Adoption of Children, § 21, page 387; 1 C. J. § 74 (c) note 29 (b), page 1386; 30 L. R.A.,N.S., page 152; and 1 Amer.Jur. pp. 639 and 640 sect. 37, have announced a principle of law similar to this: "The mother of an illegitimate child has all the parental rights of other parents, as she it is whose consent to an adoption of the child, is required. The adoption under such consent is not invalidated by the fact that she gave her consent when she was a minor."

 It is a matter of common knowledge, such as courts and the Legislature may take cognizance of, that an alarming number of babies are born out of wedlock; and that a large per cent of the babies adopted in their early infancy, come from that group. It is also worthy of note that in a publication by the United States Department of Labor Vol. 10 Number 11, the statement is made that about half of those born out of wedlock are to mothers who are less than 21 years old.

 When the legislature provided for the adoption of such illegitimate children without the consent of the father, we believe the fair implication is to be drawn, that the legislature intended they may be adopted with the written consent of the mother. We do not believe the legislative intent was to show a preference for the one half of the illegitimate children born to mothers more than 21 years old over the other half born to mothers who were less than 21, and thus penalize the babies in that group by denying them the right of adoption under the statute. To give the statute such a construction, one must relegate the latter group of illegitimate infants to adoption solely by forcing the young mother to abandon and desert her baby, so that some other arm of the law could intervene and

render the child subject to adoption. Such a construction would throw the law of adoption of illegitimate children into confusion when it can be construed to fairly accomplish the purposes for which it was intended. Trimmier v. Carlton, 116 Tex. 572, 296 S.W. 1070; Clark v. Pearson & Co., 121 Tex. 34, 39 S.W.2d 27. Assuredly, a normal young woman 18 years of age is more competent mentally to give her written consent to the adoption of her baby than she would be at the same age to figure out the technical scheme of abandoning and deserting her child in a way that some arm of the law would come in and have it adopted. Naturally its abandonment and desertion to accomplish such purpose does not appeal to the better senses of any mother. The legislature must have known all this when the Act was passed. We conclude that a fair and reasonable construction of the legislative act had the effect to confer the power and authority on an unwed 18 year old mother to consent to the adoption of her illegitimate child, and thereby exempt her from the disabilities of minority.

If we are correct in these conclusions, the judgment of adoption was valid and binding on all parties concerned, and we therefore overrule first and second points of error.

We come to a consideration of points of error 3 and 4. As before stated they are in substance that the court erred in awarding the custody of the child to appellees and not to appellants and in holding that the best interest of the child was to remain with appellees.

 The short-form judgment entered by the court makes no specific findings of the matters complained of but in the form entered, it denied to appellants all relief sought in their dual action, that is, to review the former judgment of adoption and in habeas corpus to recover the custody of the child from appellees. Its effect of course was both to refuse a review of the adoption judgment and to change the custody of the child from appellees to appellants.

 We are not unmindful of the rights vouched safe to parents to retain the custody and control of their children against the world, when there is no evidence of a bad moral character nor abuses of the child. It cannot be said that the law will take such child from its parents, though they may be poor and unable to give it the best of educational advantages, and commit it to a wealthy home which will provide luxuries and a finished college education. Broadly speaking the best interest of the child might be thought to be with the one most able to train and nurture it into maturity, but not so, such is not the law. But where that parental care has been voluntarily relinquished to another for adoption, the parent forfeits that preferential right to custody in favor of the adoptive parents.

By provisions found in Sect. 9 of Art. 46a when a child is adopted in accordance with Art. 46a "all legal relationship and all rights and duties between such child and its natural parents shall cease and determine, * * *. Said child shall thereafter be deemed and held to be, for every purpose, the child of its parent or parents by adoption as fully as though born to them in lawful wedlock. * * *."

Under Sect. 7 of Art. 46a it is provided that nothing in the Act shall be construed to mean that a court of competent jurisdiction could not take such adopted child away from the adoptive parents and restore it to its natural parents "upon proof of the bad moral character of such adoptive parent, or upon proof of abuse, neglect or ill treatment of such adopted child by the adoptive parent."

 There was no testimony offered in the instant case which remotely tended to impute a bad moral character to appellees, nor that the child had been neglected or mistreated. In fact the testimony is just the reverse of all such things; nor do appellants contend that the appellees are not "good" people and fit to have custody of the child. We are also glad to state that appellants are likewise good moral people, competent and in every way fit and proper persons to have the child. But for the fact appellant, Mrs. Austin, at a time before she married Mr. Austin, relinquished all of those parental rights, to appellees by her consent to adoption and the adjudication by the court that she had done so,

**674**

appellant's rights to custody of the child at the time of trial, would have prevailed over those of appellees. By prior proceedings referred to all of those rights once possessed by appellant Mrs. Austin were divested out of her and vested in appellees. In the absence of any testimony impeaching appellees' morals or evidence of neglect, abuse or mistreatment of the baby in any way, the court was not authorized to take the child's custody from appellees and award it to appellants. Urrutia v. Urrutia, Tex.Civ.App., 142 S.W.2d 267, writ refused.

As we view this whole record and the applicable laws to the facts involved we believe the judgment of the trial court was proper. The points of error are overruled and the judgment of the trial court will be affirmed. This is our order.

McDONALD, C. J., not participating in the decision of this case.