**PASCHKE et ux. v. SMITH et ux.**

**No. 4541.**

Court of Civil Appeals of Texas. Beaumont.

Sept. 30, 1948.

Rehearing Denied Oct. 27, 1948.

McAlister & Tucker, of Nacogdoches, for appellants.

James F. DeLorey, of Nacogdoches, for appellees.

COE, Chief Justice.

This is an appeal from an order of the District Court of Nacogdoches County, dismissing for the want of jurisdiction the application of appellants to adopt the infant daughter of appellees.

This cause is before us without a statement of facts, however, the trial court, upon request of the appellants, filed its findings of fact and conclusions of law which are as follows:

"1. I find that on September 27th, 1947, that Linda Rose Smith was born to Mrs. Naomi Smith and Martin Luther Smith, husband and wife. That on September 29th, 1947, the said Mrs. Naomi Smith and husband executed their written consent to the proponents herein for them, the proponents, to adopt said minor child, Linda Rose Smith.

"2. I find that on September 30, 1947, the proponents, the said Robert P. Paschke et ux, Ethel Rozean Paschke, filed in this court their petition, in statutory form, for adoption of the said minor, Linda Rose Smith, a girl about four days old.

"3. I find that said petition was in statutory form and at the time of its filing and at all times since, the petitioners have had the care and custody of said minor.

"4. I find that said petition of adoption had sufficient allegations of fact, sworn to

therein, to warrant setting this case for hearing at the earliest date possible and before six months.

"5. I find that the Clerk of this Court mailed a certified copy of the petition to the Executor Director of the State Department of Public Welfare, Austin, Texas, on October 8, 1947, and that such Executive Director had statutory notice of such hearing, and that no objection was filed by such Department or Director.

"6. I find that the natural parents of said child, the said Martin Luther Smith and wife, Naomi Smith, voluntarily and freely relinquished the care and custody of said child and waived notice of such adoption hearing in proper form and gave full permission to such proceedings.

"7. I find further that the investigator was appointed on October 9, 1947, and a favorable report of such investigator is on file in this cause, showing that the petitioners, Robert P. Paschke, et ux, Ethel Rozean Paschke, were proper persons to have the care and custody of said child, and that they were willing and able to furnish said child a suitable home and to provide for the satisfactory rearing and education of said child.

"8. I find that prior to the hearing on said adoption, on December 1st, 1947, the said natural parents of said child, the said Martin Luther Smith and wife, Naomi Smith, withdrew their consent in writing for the adoption of said child, and both parents of said child testified in this case, that they were not willing for said child to be adopted by any one.

"9. I find that the proponents and the petitioners herein, Robert P. Paschke, et ux, Ethel Rozean Paschke, are the proper persons to have the care and custody of said child, Linda Rose Smith, and that the best interest of said child would be served and it would be more advantageous to the welfare of said child if the petition for adoption could be granted.

"10. I find that at the time the petition was filed, for adoption, there was attached thereto the free and voluntary waiver of the natural parents, and their agreement for adoption of said child by the petitioners herein.

"11. I find that the proponents and petitioners herein, the minor child and the natural parents, are all white persons and of the white race.

"Conclusions of Law

"1. I conclude that the free and voluntary permission for adoption, though obtained freely and willingly, and without fraud, could be withdrawn by the natural parents at any time prior to a hearing by this Court on the petition for adoption, and this having been done, I further conclude that this Court has no authority or jurisdiction in this cause.

"2. I conclude that by such withdrawal of permission, the Court has lost all jurisdiction over the subject matters and the parties, and that this Court has no authority or jurisdiction other than to dismiss the petition for adoption for want of jurisdiction."

While appellants' brief contains six points upon which this appeal is predicated, we will not undertake to set them out in hec verba. In substance they are to the effect that the trial court erred in dismissing the application for want of jurisdiction, contending that no action on the part of appellees could deprive the court of jurisdiction after it had once attached; that the trial court was in error in holding that the natural parents as contestants could arbitrarily withdraw their consent for adoption without reference to the welfare of the minor child sought to be adopted; that the trial court was in error in denying appellants' application to adopt said minor child since the custody of such minor had been freely and willingly given by the natural parents to appellants and appellees having had timely notice of the suit, and all statutory requirements for adoption having been complied with; and the court finding that the best interest and welfare of the child sought to be adopted would be best served by granting the adoption.

 To our minds the proper disposition of this appeal revolves upon the proposition of law as to whether the natural parents of an infant child, after having freely and willingly given their written consent for the adoption of such child, have a

right to withdraw such consent before the court acts upon such application. We have been cited to no case in Texas holding that the natural parents cannot withdraw such consent before final judgment of the trial court. However, in the case of Hammond v. Chadwick, 199 S.W.2d 547, the Court of Civil Appeals of Waco, in an opinion written by Chief Justice Lester it is stated in effect that the weight of authority is to the effect that the question whether the parent can withdraw his previously given consent to the adoption of his child must be determined from facts of the particular case. So far as we have been able to find this is the strongest statement in any Texas case supporting the contentions of appellants. On the other hand, in 2 C.J.S., Adoption of Children, § 21, page 386, the rule is thus announced "consent may be withdrawn at any time before adoption, even though given in writing, and accompanied by transfer of the custody of the child, and even though the natural parent had abandoned the child; and an adoption based upon a consent that has been withdrawn is void." To the same effect is the holding in Austin v. Collins, Tex.Civ.App., 200 S.W.2d 666; Fitts v. Carpenter, Tex.Civ.App., 124 S.W. 2d 420. We agree with the rule announced in the last above cited authorities. An agreement by the prospective adopting parents on one part and the consent of the natural parents of a minor child on the other does not give such agreement the status of a contract where either party could enforce specific performance. No one would contend that the prospective adopting parents could not change their minds and decide not to go through with the adopting proceedings and for the same reason we feel that the natural parents should have the absolute right to withdraw their consent for adoption of their minor child at any time before the final judgment of the adoption was entered by the trial court. It seems that our legislature had this in mind when they provided in effect that no judgment of adoption should be entered, with certain exceptions, until the minor had resided in the home of the prospective adopting parents for at least 6 months, thereby giving them sufficient time for deliberate meditation of the result of taking upon themselves the legal responsibility of rearing and educating such a child. While on the other hand the consenting parent or parents may also have that period of time in which to thoroughly weigh the effects of relinquishing all their legal rights and responsibilities with reference to their offspring. This rule we believe to be a just one, not only for the welfare of the minor, but for the happiness and welfare of all parties concerned. It is intended to prevent hasty adoptions without mature meditation on the part of all parties concerned and to allow each party to fully realize the full effects of their proposed acts. The matter of adopting children is much more serious and binding than the usual judgment in a child custody case where such custody may be changed by the court from time to time as changed conditions may require.

It is quite true that facts and circumstances could exist where it would seem inequitable to permit the parents to withdraw their consent for adoption of their minor child after it had been freely and willingly given. We are of the opinion, however, that the rule which permits the natural parents to withdraw their consent to an adoption at any time before final judgment is entered by the trial court is the better rule, and will work less hardship and unhappiness to all parties concerned. If the natural parents are unworthy to rear their offspring there are adequate remedies by which they can be deprived of its custody without entering an adoption decree over their protest. Should we be wrong in this conclusion we would still be unable to hold that the appellees here did not have equitable grounds to justify withdrawing their consent. As stated above, we have no statement of facts and therefore have no way of knowing why appellees withdrew their consent. It might be contended under the conclusion of the trial judge that he was convinced that they had the right to withdraw their consent as a matter of law and therefore he had no power to refuse the withdrawal thereof. However, in the state of the record as it is before us it might also be reasonably contended that since the consent was withdrawn that it will be implied that it was with the permis-

sion of the trial court. However, we do not base our opinion in this case on this point. Having reached these conclusions, we are convinced there can be no reversible error in the remaining points advanced by appellants. Whether the trial court should. have dismissed the case for want of jurisdiction or denied such application for want of power to grant same would, in the end, have the same effect on appellants' position in the matter, and if it was error to dismiss the case for want of jurisdiction as was done by the trial court (a point we do not decide), it was harmless error, as under our view the trial court was without authority to grant the relief prayed for, therefore the judgment of the trial court is affirmed.