**McRAE et ux v. LAMB et ux.**

No. 12170.

Court of Civil Appeals of Texas.
San Antonio.

Sept. 27, 1950.

Davis & King, San Antonio, for appellants.

Maverick, Putman & Putman, San Antonio, for appellees.

NORVELL, Justice.

This is a child custody case. The appellants are Frank L. McRae, Jr., and his wife, Dorothy Y. McRae, who sought to

adopt Peter Ulric Kirley, the minor son of Thomas U. Kirley and his wife, Dorothy Kirley. Appellees are Carter H. Lamb and Victoria Lamb, the parents of Dorothy Kirley. The order appealed from was entered in a consolidated case wherein the petition for adoption was combined with an application for writ of habeas corpus filed by appellees.

The judge of the district court awarded the custody of the child to its natural mother, Dorothy Kirley, and appellants complain of this action, contending that the proposal to award the custody of the child to Dorothy Kirley was not suggested by the pleadings and was not considered by the parties below as a possible solution of the admittedly difficult problem presented by the facts of this case.

■■ Appellants have filed a brief containing numerous quotations from and references to the statement of facts. None of appellants' statements relating to the evidence is controverted by appellees. Under Rule 419, T.R.C.P., these statements of appellants may be accepted as correct by us. When this is done, the award of custody to Dorothy Kirley can not be sustained on the facts, due primarily to her physical inability to take care of the child.

We have not confined ourselves to the evidence specifically referred to by the brief, but have read and considered the entire statement of facts. This examination discloses that appellants statements and summaries are accurate and in accordance with the record. It is our considered opinion that the case must be retried for the reasons hereinafter indicated.

On December 31, 1949, appellants, Frank L. McRae, Jr., and wife, Dorothy Y. McRae, filed a petition wherein they sought to adopt Peter Ulric Kirley, a minor. The consents of Thomas U. Kirley and Dorothy Kirley, the natural parents of the minor, were attached to the petition as a part thereof. It was alleged that the child was then four and a half years of age and had lived with appellants in their home since September 3, 1949; that they had learned to care for and love the child as their own; that McRae was a member of the United States Armed Forces then stationed at

Brooks Field near San Antonio, Texas; that the child had been turned over to appellants by its natural parents; that the child had not, prior to that time, been properly cared for, as "the mother of said child (Dorothy Kirley) is highly nervous and not able to care for said minor properly." In view of these alleged facts, the court was requested to waive the six months' period prescribed by Article 46a, § 3, Vernon's Ann.Civ.Stats.

On February 14, 1950, the maternal grandparents, Carter H. Lamb and Victoria Lamb, who were made parties to the adoption proceedings, filed a pleading termed a petition of intervention contesting the adoption proposed by Sergeant McRae and his wife. As to the condition of the natural mother of the child, the Lambs alleged:

"That the said Dorothy Kirley is seriously ill, being afflicted with multiple sclerosis and is now and has been since and prior to the institution of this suit a patient in various hospitals and by virtue of such condition, she is not capable of comprehending the nature of her acts or determining what action would be for the best interest of said minor child, Peter Ulric Kirley, and that at the time of execution of the alleged consent to this adoption proceeding, she was then a patient at Brooke General Hospital in San Antonio, Bexar County, Texas."

On March 30, 1950, Mr. and Mrs. Lamb filed an application for writ of habeas corpus to determine the custody of the child. It was alleged therein that appellants, as the grandparents of the minor, "are the persons lawfully entitled to custody of said minor in that the said Dorothy Kirley, mother of said minor, is ill and unable at present to care for said minor."

Except for the allegation that Dorothy Kirley was not capable of determining what action would be for the best interest of the child, there appears in the transcript no pleading attacking Dorothy Kirley's consent to the proposed adoption. However, there appears in the statement of facts a letter dated February 12, 1950, apparently written by Dorothy Kirley, while a patient at the Creedmoor State Hospital, New York, stating that she wished to withdraw

adoption proceedings concerning her son, Peter.

▮▮ Child custody cases are generally controlled by the evidence rather than by technical rules of pleading. Tunnell v. Reeves, Tex.Com.App., 35 S.W.2d 707; Williams v. Perry, Tex.Com.App., 58 S.W. 2d 31. However, a hearing upon an application for habeas corpus involving a child is not an informal action. It follows the pattern of a civil action, and the issues upon which the case is decided should be suggested by pleading or by some other method permitted by the Rules of Civil Procedure. In the present case, all parties filing pleadings alleged that the mother was not able to take care of the child. The contest was primarily one between the maternal grandparents and the actual custodians of the child. Appellants say that had they been put on notice that the issue of Dorothy Kirley's custody of the child was to be litigated, they would have produced further evidence. On the other hand, it may be that Dorothy Kirley, through proper pleadings and representation on her part, might have been able to bring forward evidence tending to support a claim to custody on her behalf. In these proceedings we will not foreclose this opportunity against her. It is sufficient here to say that, aside from the question of the issue being raised, the overwhelming preponderance of the evidence, as disclosed by the present record, indicates that Dorothy Kirley is suffering from multiple sclerosis, a disabling disease which affects both the body and mind, and that as a result of the ravages of this disease she has spent a large portion of the last year in various hospitals located in Texas and New York State. At the time of the trial she was living with her parents and apart from her husband, but the award of custody was not made to the parents, Mr. and Mrs. Lamb, who requested it because of their daughter's disability, but to the daughter, who, if physically able to do so, could leave her parents' home at any time and take the child with her.

▮▮ In view of another trial, in which the parties and the pleadings may be different, we will not further comment specifically upon the evidence. It is recognized that the legal position of a natural parent with reference to the custody of a child differs from that of another person in that the law presumes that the best interest of the child will be served by his being under the control of his natural parents. State ex rel. Wood v. Deaton, 93 Tex. 243, 54 S. W. 901; DeWitt v. Brooks, 143 Tex. 122, 182 S.W.2d 687; Fleming v. Honeycutt, TexCiv.App., 205 S.W.2d 137. It therefore seems that when the natural parent has parted with the custody of the child and desires to regain it, such parent should, in accordance with orderly procedure appear in court and there assert his alleged right of custody and have the same determined upon full notice and complete hearing. For a statement of the rules applicable to this and similar situations, see the leading case of Legate v. Legate, 87 Tex. 248, 28 S.W. 281, Denman, J.

▮ What has heretofore been said relates primarily to the habeas corpus feature of this case, but in view of another trial, it is deemed appropriate to express our views upon the adoption issue which is involved in the consolidated case. The trial judge treated the letter of Dorothy Kirley, dated February 12, 1950, and addressed to the District Court, as terminating the district court's jurisdiction to enter a decree of adoption. Mrs. Kirley stated that she wished to withdraw adoption proceedings. . The question raised by this ruling relates to a matter of public policy involving the asserted right of the natural parent to arbitrarily revoke his or her consent to a proposed adoption of a child at any time prior to the rendition of a decree carrying the adoption into effect.

Upon this point there is a conflict of authority among the American decisions. One line of cases holds that the right to withdraw consent before entry of decree is absolute. Fitts v. Carpenter, Tex.Civ.App., 124 S.W.2d 420, and other Courts of Civil Appeals decisions following that case are seemingly in accord with this rule. See, Austin v. Collins, Tex.Civ.App., 200 S.W.2d 666; Paschke v. Smith, Tex.Civ.App., 214 S.W.2d 205; Smith v. Curtis, Tex.Civ.App., 223 S.W.2d 712. (The wording of the hold-

ing of Fitts v. Carpenter, supra [124 S.W. 2d 421], is that a parent "may withdraw his consent before the instrument evidencing his consent *is acted upon.*" The case does not decide whether the filing of a petition for adoption or some other act would constitute "acting upon the consent," as the decision in the case was that it appeared conclusively, as a matter of law, that no actual consent to adoption had been given. In Austin v. Collins, supra [200 S.W.2d 668], the words "acted upon" were construed as "acted upon the by court." Paschke v. Smith, supra [214 S.W.2d 207], holds that consent may be withdrawn "at any time before the final judgment of the adoption was entered by the trial court." The holding of Smith v. Curtis, supra, is similar.)

However, the Waco Court of Civil Appeals, in Hammond v. Chadwick, 199 S.W. 2d 547, indicated a preference for the rule which holds that withdrawal of consent must be supported by good cause shown, this is, each case must be judged upon its particular facts in the light of equitable principles, and the chancellor must be satisfied that the best interests of the child as well as other persons concerned will be served by permitting the withdrawal of a consent theretofore freely and voluntarily given.

In view of another trial, we deem it advisable to state our agreement with the Waco Court in preferring the rule last set out.

From an examination of the reported cases, it seems that since the decision of the Massachusetts Supreme Judicial Court in Wyness v. Crowley, 1935, 292 Mass. 461, 198 N.E. 758, the rule which does not permit an arbitrary withdrawal of consent, has become the majority American rule. This is indicated by the annotations appearing in 138 A.L.R. 1038, and 156 A.L.R. 1011, as well as the cases appearing in the pocket parts of 2 C.J.S., Adoption of Children, § 21(4), page 386.

The question apparently has not been passed upon by the Texas Supreme Court, and although we are reluctant to depart from the holdings announced in the cited opinions of certain Courts of Civil Appeals,

we feel that in the light of the later cases and peculiar provisions of the Texas Statute, a withdrawal of consent should be passed upon by the trial judge as a chancellor with power "as *parens patriæ,* to diagnose the case of the unfortunate infant and prescribe a course of treatment for its future; unhampered by the changing winds of emotion which alternately submerge and restore parental attributes."

We are impressed with the soundness of the views of Associate Justice Justin Miller of the Court of Appeals of the District of Columbia in Re Adoption of a Minor, 79 U.S.App.D.C. 191, 144 F.2d 644, 648, 156 A.L.R. 1001, from which the above quotation is taken, and wherein it is said that:

"It is apparent that if in particular cases the unstable whims and fancies of natural mothers were permitted, first, to put in motion all the flow of parental love and expenditure of time, energy and money which is involved in adoption, and then, as casually, put the whole process in reverse, the major purpose of the statute would be largely defeated. Doctors of medicine and of divinity, potential adoptive parents and social workers would be stymied in their rehabilitative efforts. A premium would, instead, be put upon the emotional instability which produces illegitimates; to say nothing of the possibilities for racketeering which such an interpretation of the law would put in reach of those who may be criminal in their tendencies as well as lacking in the qualities of parenthood."

The Texas statute is similar to that considered by the Massachusetts Court in Wyness v. Crowley, 292 Mass. 461, 198 N.E. 758. The rule requiring a showing of good cause for a withdrawal of consent does no violence to the literal wording of the law, Article 46a, § 6. The Texas statute prescribes that as the usual thing, the child shall live in the home of those seeking to adopt it for a period of six months. It requires no particular gift of foreseeability to predict that the right of arbitrary revocation may become the means of exacting payments and promises wholly unassociated with the child's welfare from prospective adoptive parents whose affections have become attached to the child during this stat-

utory period. The knowledge that this arbitrary power of revocation exists may well cause persons contemplating adoption to hesitate or wholly desist therefrom and thus defeat the purpose of the statute. Arbitrary action is not compatible with the principles of equity. To a degree, freedom of application of chancery precepts should be maintained. "Courts should not allow themselves to become static nor so hedged about with barriers of their own making, as to render themselves incapable of performing the functions for which they were created and maintained." Powers v. First. Nat. Bank of Corsicana, Tex.Civ.App., 137 S.W.2d 839, 843, affirmed, Powers v. First Nat. Bank of Corsicana, 138 Tex. 604, 161 S.W.2d 273. It seems to us that the rights of all may be better protected by requiring that equitable principles be satisfied before a revocation be made effective.

The decree of the trial court is reversed and the cause remanded for further proceeding not inconsistent with this opinion.