**Max V. CLAYTON et ux., Appellants,**

v.

**C. L. SMITH, Appellee.**

No. 10308.

Court of Civil Appeals of Texas.

Austin.

March 30, 1955.

Rehearing Denied April 27, 1955.

C. C. Jopling, La Grange, for appellants.

Harvey R. Clark, Schulenburg, for appellee.

ARCHER, Chief Justice.

Writ of Habeas Corpus was filed by C. C. Jopling for and in behalf of Maxine A. Clayton alleging that the said Maxine A. Clayton was being illegally restrained of her liberty by C. L. Smith. Citation was issued to C. L. Smith and he was directed to produce Maxine A. Clayton before the District Court on the 20th day of July, 1954, at 10:00 A.M. C. L. Smith filed his answer and appeared at the time directed. The appellants, on said date, obtained leave of the court to file plea of intervention. Respondent, C. L. Smith, filed a supplemental petition. The case was tried on November 3, and on November 9, the court entered judgment denying the writ of habeas corpus to which judgment appellants objected and gave notice of appeal to this Court.

There are four assignments of error and are to the effect that the court erred in not holding as a matter of law that the appellants did not have the right to withdraw the written consent, and erred in concluding that appellants would necessarily have to show that sufficient cause existed for appellants to revoke the written consent for the adoption of their child, and it was error for the court to hold that the burden of proof was upon appellants to show that good cause existed for them to repudiate the written consent, since the court had found that appellants were fit and proper persons to have the care and custody of their child, that the court erred in refusing custody to appellants because there is a presumption of law that the best interest of the child will be subserved by allowing it to remain in the custody of its natural parents, and that appellee failed to discharge the burden to overcome such presumption and the evidence offered was insufficient to overcome such presumption.

The subject of this litigation is a girl born March 5, 1954, the child of Max V. Clayton and wife, Marcella Clayton, residents of Waller, Texas.

Mr. and Mrs. Clayton have eight other children and were in dire circumstances prior to and at the time of the birth of the baby, whose possession is sought, and had concluded to let the baby out for adoption prior to its birth, and one person had agreed to pay the hospital bill and would have taken the child except for the fact that Mr. Clayton was subject to seizures and had an attack, and upon learning of this the prospective adopter declined to take the baby.

When the child, named Maxine, was about two and one half months old Mr. and Mrs. C. L. Smith got the child and the parents signed an instrument on May 21, 1954 consenting for the Smiths to adopt the child, and in about a week and prior to the filing of any adoption proceedings, the Claytons repudiated the consent and asked for the return of the child but the child was not returned.

On July 13, 1954 an application for a writ of habeas corpus was filed in Fayette County, Texas. Hearing was set for July 20, 1954 and C. L. Smith was commanded to produce the child in court.

The Smiths filed answers and pleaded the written consent as a bar and made further pleadings that if the court did not see fit to give them custody that the child be placed in an institution or with some other family for adoption.

The Claytons intervened in the cause and pleaded that they were the parents of the child and entitled to the immediate possession, care and control of the child.

The Smiths filed other answers and made other allegations as to their financial circumstances.

A hearing was had at which both of the Claytons testified and C. L. Smith testified. Mrs. Clayton testified as to her condition physically and otherwise and that she was overpersuaded to give up the child and was shamed into letting them have the child because she was so poor. She detailed the numerous places she and Mr. Clayton had lived, and that Mr. Clayton was subject to epileptic seizures, and as to the execution of the consent agreement and of efforts to get the child back.

C. L. Smith testified concerning his place of residence and that he heard of the Clayton family and went to see them a few days before Easter and asked if he might adopt some of the children and took the twin children of appellants home and kept them for a week and returned them, and on Easter Sunday he and his wife brought the baby home with them, telling the Claytons that they would return the baby in a week or two, but kept her for three weeks and returned her but asked Mrs. Clayton for permission to keep the child one more week and then took her home and talked about adopting her but the Claytons said they did not know what they were going to do; that on May 21, 1954, Mr. Clayton called and said bring your papers and we will sign them, which they did in the night and he took the little girl home with him and that he got a letter to bring the child home, that the Claytons wanted the child back.

On cross-examination Mr. Smith testified that he would not let the child go and that they had not taken any steps to adopt the child or file any papers other than getting the birth certificate straight.

The witness further testified that he took the consent paper to his counsel and that he went to see the Claytons and tried to adjust the matter and that if they wanted the child they could come and get her and on further cross-examination stated that he would not have let them have the child even if they had come for it.

Mr. Clayton testified that he was employed in a feed mill and had been since August at a salary of $50 per week and that he wanted the child back, that he was a member of the Baptist Church and regularly attended with the children.

On cross-examination the witness said he was subject to epileptic spells, that he informed his employer of his condition and was told that this would not make any difference and if he got sick to go home and lay down for a time and return; that Mr. Smith gave him $20; that he was shamed into giving the child up, being told by

Smith how poor they were; that the church helped them some and that his father helped with the rent.

The court made findings of fact and conclusions of law and found that the Claytons freely and voluntarily turned the child over to the Smiths; that the best interest and welfare of the child are subserved by leaving it with the Smiths; that they are proper persons to adopt the child, and that there existed no cause for the parents to revoke their transfer of said child.

On appellant's request the court found that the Claytons, the natural parents of said child, are fit persons to have the care and custody of said minor child.

■ We believe that appellants had the right to repudiate and withdraw the consent given for appellee to adopt their child without a showing of sufficient cause to do so, and particularly so prior to the filing of any adoption proceedings, and too, when it is found by the trial court, as was done in this case, that the natural parents were fit and proper persons to have the custody of their child.

Article 46a, Sec. 6, Vernon's Ann.Civ. St.; Austin v. Collins, Tex.Civ.App., 200 S.W.2d 666, error ref., n.r.e.; Paschke v. Smith, Tex.Civ.App., 214 S.W.2d 205, error ref., n.r.e.; 2 C.J.S., Adoption of Children, § 21, p. 386.

In Williams v. Liles, Tex.Civ.App., 245 S.W.2d 551, no writ history, the court discussed the question of the right to withdraw consent, citing cases and in particular McRae v. Lamb, Tex.Civ.App., 233 S.W.2d 193, no writ history, and decided that withdrawal of consent could be done at any time before adoption is acted on by the court.

We do not believe that McRae v. Lamb, supra, is controlling in this case. In the McRae case the litigation was actually between the McRaes and the maternal grandparents, Carter H. Lamb and wife, and the pleadings did not raise the issue as to the award of the child to its mother, who

admittedly was highly nervous, not able to care for the child, seriously ill being afflicted with multiple sclerosis and a patient in various hospitals, not capable of comprehending the nature of her acts or determining what action would be for the best interest of the child.

Then too, in the McRae case the court reversed the action of the trial court in awarding the child to its mother. The court stated that it might be that the mother of the child through proper pleadings and representation on her part might be able to bring forward evidence tending to support a claim in her behalf and that the court would not foreclose this opportunity against her.

The court stated that the law presumes that the best interest of the child will be served by being under the control of his natural parents.

In Platt v. Moore, Tex.Civ.App., 183 S.W.2d 682, writ ref., n. r. e., the court considered the necessity of written consent in adoption cases.

In Hammond v. Chadwick, Tex.Civ.App., 199 S.W.2d 547, no writ history, the court held that a repudiation of consent could be had before the court entered a final judgment in adoption proceedings and before the foster parents had custody of the child for any considerable time and had expended much money in support of the child. The court reversed the action of the trial court in allowing the Chadwicks to adopt the child and rendered judgment awarding the child to its natural parents.

As we have stated, the court found that appellants, the natural parents of the child, are fit and proper persons to have the custody of their child but found that the best interest of the child would be to allow the Smiths to adopt it. In this latter conclusion the court was in error.

The judgment of the trial court is reversed and judgment rendered for appellants.