Emma Jo GRIGGS, Appellant,

v.

Roy GRIGGS et ux., Appellees.

No. 6648.

Court of Civil Appeals of Texas.

Beaumont.

Jan. 9, 1964.

Rehearing Denied Feb. 12, 1964.

Sam Bass, Freeport, for appellant.

Ward W. Markley, Barber & Seale, Jasper, for appellees.

McNEILL, Justice.

This appeal is from an adverse judgment rendered on a non-jury trial of a bill of review, wherein Emma Jo Griggs sought to have an adoption theretofore granted of her infant daughter set aside and to recover custody of the child.

Chronologically, the facts are: Emma Jo and Bobby Joe Griggs, deaf-mutes, were man and wife living in Houston. They had the child, Debbie Dee. A short time after the birth of the child the couple had marital difficulties. There finally was a separation and Emma Jo Griggs moved to Freeport. On April 21, 1962, Bobby Joe Griggs, his father, Roy Griggs, and his pastor, a Reverend Allen of Houston, went from Houston to Freeport to talk to Emma Jo Griggs about giving her consent to the paternal grandparents, Roy Griggs and wife, Opal Griggs, to adopt the infant. After some discussion she agreed and signed and acknowledged her consent before a notary public at Freeport. Bobby Joe Griggs, her husband, also executed his consent there. On April 24, 1962, Roy and Opal Griggs, appellees herein, filed their petition for adoption of the child in the District Court of Jasper County, the county of their permanent residence, although at the time they were temporarily staying in Houston.

After having filed the consent to adoption, Emma Jo Griggs told her pastor's wife, a relative, that she had given her consent to the adoption of her child. Then followed a lengthy discussion with the relative's husband, a Brother Allen, pastor of the Assembly of God Church at Freeport, and it was determined that Emma Jo Griggs should see a lawyer about revoking her consent. For this purpose she called on Mr. Thad Davis, a lawyer in Freeport, who prepared a letter for her addressed to Roy Griggs and wife to their address in Houston. While the court in the trial below in the present case did not allow the introduction of a copy of the letter in evidence, both appellees Roy Griggs and wife admitted that on or about April 25th they received a letter from Emma Jo which was to the effect that she revoked her consent to the adoption of the child.

The hearing on the adoption was set for June 4, 1962. Early that morning Roy Griggs drove from Houston to Freeport to talk to Emma Jo Griggs and to get her to go with him to attend the Jasper Court adoption proceeding. He talked to her and she called her uncle, the Brother Allen of Freeport, and he advised her not to do anything until she had discussed the question with her lawyer, Thad Davis. After doing this and on her lawyer's advice, she told appellee Griggs that she would not go with him to Jasper.

Griggs met his wife, Opal, in Jasper and in the early afternoon appeared in court and the trial court granted the adoption. When asked on the trial of the present proceeding (which was filed July 11, 1962) whether he advised the court of the facts of Emma Jo's revocation of her consent, appellee Roy Griggs said:

"A. We told this Court the story.

"Q. Did you tell the Court that you had received this letter from your daughter revoking the consent to adoption?

"A. Yes. We told the Court the whole story about the adoption."

His wife, Opal Griggs, when asked whether she had informed the court that the consent for adoption had been revoked by the letter, she answered, "I didn't." Appellee Griggs evidently pursued the adoption proceeding with the following explanation:

"Q. Now you testified that she has a number of times consented to the adoption then she changes her mind?

"A. Correct.

"Q. And this was not too unusual when you received a letter was it?

"A. No.

"Q. And then later she lead you to believe it was allright, is that true?

"A. Yes."

■ Appellant urges several points attacking the judgment below but we pretermit discussion of all save the one that asserts the trial court erred in holding Emma Jo Griggs, appellant, had not revoked consent to the adoption of her child. The court was in error in holding there had not been an effective revocation of the consent to adoption. In Wilde v. Buchanan, Tex.Civ. App., 303 S.W.2d 518, it was held that the mother has the unconditional right to withdraw her consent to adoption up until the

adoption is granted. This holding was expressly approved by the Supreme Court. 156 Tex. 606, 305 S.W.2d 778. See also Newby v. Heard, Tex.Civ.App., 341 S.W. 2d 563. The mother's withdrawal of consent withdrew the father's consent. Williams v. Liles, Tex.Civ.App., 245 S.W.2d 551. It was held in Paschke v. Smith, Tex. Civ.App., 214 S.W.2d 205, that when the natural parents withdraw their written consent for adoption before the trial court has granted an adoption the court thereupon lost its right to grant the adoption.

Appellees contend that a revocation must be done by an instrument of the same dignity as that of the original consent and that it should be brought home to the trial court before his action granting the adoption. No case is cited to us sustaining this position. And we have been unable to find any. It was said in Catholic Charities of Diocese of Galveston, Inc. v. Harper, 161 Tex. 21, 337 S.W.2d 111, at p. 112: "The consent must be effective and continuing up until the time of the judgment entry." In this case after executing the consent to let the Catholic Charities place her child for adoption, the mother advised the organization she was withdrawing her consent and the Court of Civil Appeals held this was an effective withdrawal. 331 S.W.2d 761. However, the Supreme Court held because of the statutory difference in the ordinary consent-adoption procedure and that providing for parents to consent that such an agency as the Catholic Charities may place their child for adoption, a distinction exists so that after a consent is duly executed to such an agency, ordinary revocation may not take place. The holding of the Court of Civil Appeals in this case, we think, is authority for the proposition that a revocation brought home to the person who is granted leave to adopt the child is sufficient; and although that holding was reversed, it was done upon a distinction in the statutory proceeding—not upon the type or kind of revocation.

In view of the solicitude of the courts to protect the natural parent from any hasty

**940**

or ill-considered act in signing consent, we hold that the letter of revocation actually received by appellees effectively took away from the trial court the authority to grant the adoption. The testimony above quoted, upon which appellees rely, tending to indicate that Emma Jo had again changed her mind, we think, is not sufficient upon which to hold the trial court was re-invested with the right to grant the adoption.

It is not remiss to state that the bill of review was promptly filed and prosecuted. The judgment of the trial court is reversed and the order of adoption made June 4, 1962, of said minor by appellees by the District Court of Jasper County is hereby set aside, annulled and cancelled and the custody of the minor, Debbie Dee Griggs, is hereby awarded to the natural parents, Bobby Joe Griggs and Emma Jo Griggs.